[Decided February 28, 1888.]

## *RE ESTATE OF HOUCK & MEYER.

### [S. C. 17 Pac. Rep. 461.]

1. PROBATE PRACTICE—SALE OF REAL ESTATE TO PAY DEBTS—CODE, §§ 1142-49.—Where a petition is presented for the sale of real property of a decedent to pay debts, the only proper inquiries are (a) whether there are legitimate claims unpaid, and (b) whether the proceeds of the sale of personal property have been exhausted. The question of heirship does not arise until the final distribution of the estate: Code, §§ 1142-49.

2. PROBATE PRACTICE—TIME FOR PRESENTING CLAIMS.—In Oregon there is no limitation to the time within which a claim may be presented against an estate, and delay in the proceedings is not a ground for refusing an application by the administrator to sell real property. The county court will hasten proceedings in proper cases and on a proper showing.

3. PARTNERSHIP ESTATE—CLAIM OF ADMINISTRATOR.—The administrator of an estate may, before he has filed his bond, present his claim to the county judge for allowance; and the fact that he is not able to actively

---

*Not heretofore officially reported.

discharge the duties of administrator because his bond is not filed, does not affect his right to have his claim allowed, or affect the right of the county judge to allow it.

Linn County.   Reversed.

Thayer, J.— This appeal is from a judgment of the circuit court for the county of Linn, affirming a decision of the county court for said county in probate proceedings.

It appears from the transcript that Henry Meyer, on the seventeenth day of June, 1875, died in said county of Linn, intestate; that at the time of his death he was a resident of said county, was a partner with one Christopher Houck, under the firm name of Houck & Meyer, and was seized and possessed of real and personal property, a part of which he owned individually, but the greater part thereof belonged to the firm of Houck & Meyer; that he left no widow or known heir; that he was a German by birth, but had resided in the state for nearly twenty years; that on the twenty-second day of June, 1875, J. A. Crawford of said county applied to the said county court to be appointed administrator of the individual estate of the deceased, and was accordingly appointed administrator thereof; that he thereupon duly qualified as such administrator, and filed an inventory, including both the individual and partnership estates; that said Houck failed to apply to be appointed administrator of the said copartnership estate within the time required by law, whereupon the administration thereof devolved upon said Crawford, as provided in the statute, but he failed to file his undertaking as administrator of the copartnership estate until the eighth day of May, 1877; that on the fifteenth day of September, 1881, said Crawford, as administrator of the copartnership estate, filed his petition to the said county court for an order of sale of the real property belonging thereto; that a citation to the heirs to show cause why such sale should not be made was duly issued and served by publication; that at the time specified in the citation for showing cause as therein required, Maria Agnes Meyer, Casper Henry

Meyer, John Frederick Meyer, Bernard G. A. Meyer, John Casper Henry Meyer, Maria Engel Meyer, and Anna Sophia Meyer, claiming to have been the brothers and sisters of, and that they were next of kin to, the intestate, appeared in the said proceedings and filed a long list of objections to the granting of the said petition, including a number of charges against the conduct of the administrator in administering upon the estate.    This apparently unlooked for and unexpected advent seems to have aroused so much antagonism that it quite distracted the course of proceedings upon the petition.    The county court evidently forgot its duty to proceed, inquire, and find whether it was necessary that the real property, or any portion thereof, should be sold, and that the finding involved only an ascertainment whether the proceeds of the sale of personal property had been exhausted, and the legitimate charges, expenses, and claims had not all been satisfied; and that such finding could be made irrespective of the question as to who the heirs of Henry Meyer were, or whether he had heirs or not.    All hands seemed to think that it was necessary, at this important juncture, to stop all inquiry which the statute requires to be made in such cases, and engage at once in ascertaining whether the seven persons named, late of Germany, were the right heirs to the estate or mere pretenders. No immediate distribution of the estate was contemplated, nor is likely to be made soon, yet the parties representing it, and those claiming an interest in it, proceeded energetically to make up extensive and formal issues involving principally the question whether these Germans were or not of the same stock of the deceased, and to take the depositions of a great number of witnesses upon that point, occupying a period of four or five years in that vain pursuit.    Such fact may have to be determined at the final winding up of the estate and termination of the proceedings connected therewith, but it is time enough, as has been said, to cross a stream when you get to it.    The inquiry was entirely premature and

unnecessary,   When these parties appeared claiming to be the heirs of the intestate, they should have been admitted to show any relevant and pertinent cause why a sale of the real property should not be made in accordance with the petition, without questioning their heirship. Such a course would not have enlarged the duties of the county court in the premises; it would have assisted the court in ascertaining the facts necessary for it to know, and which it was required to find, before granting the order applied for, whether any one appeared to show cause against it or not.   Heirs do not admit the facts alleged in the petition, in such cases, by not appearing, and it is only to afford them an opportunity to point out objections to granting it, which the court might overlook, that they are notified to appear.

This court will not undertake to determine from the evidence whether or not the parties alluded to are the heirs of Henry Meyer.   Nor was it necessary for the circuit or county court to make any such determination. The only question for this court to decide is whether or not the county court should have found that it was necessary to order a sale of the real property of the deceased, or any part of it.   If the proceeds of the sale of the personal property had become exhausted, and there were still funeral charges, expenses of administration, or claims against the estate which had not been satisfied, it was certainly the duty of the county court to make the order to sell the real property, or a sufficient part thereof to liquidate any balance of such charges, expenses, or claims.   Sections 1110, 1113, and 1117, Code of 1874, provide to that effect, and the county court had no right to go outside of their provisions.

It was contended at the hearing that the administrator had procrastinated the business of settling the estate to such an extent that the county court was justified in denying the application for the order of sale of the real property upon that ground.   That may be the rule in some of the other states but it is not the rule under our

procedure. There is no limitation in this state as to the time when a claim against the estate of a deceased person may be presented, nor as to when such an application is required to be made. The county court has jurisdiction over the proceedings of administrators, and authority to direct and control their conduct and settle their accounts: Sub. 3, sec. 869, Code of 1874. And the court is always open for the transaction of such business: Sec. 877, id. If any delay, therefore, has occurred in the administration of this estate, the administrator is not alone chargeable with it. Parties interested in the estate could very easily have had his movements expedited, and the court could have done so of its own motion.

Another question contended for on the hearing was that the administrator's personal claim against the estate, amounting to three thousand dollars and interest, included in the schedule annexed to his petition, had never been legally allowed, and was barred by the statute of limitations at the time the petition was filed. It appears that the administrator, on the first day of July, 1876, presented the claim to the county judge of Linn County for allowance, and that such judge duly allowed it as a claim against the said estate; but counsel for the respondents insist, that as the administrator had not at that time filed his undertaking as administrator of the partnership estate, he was not, under the statute, authorized to act as such, and that the county judge referred to had no authority to allow it; but I do not think it follows that because the administrator was not allowed to act as such that he could not have his claim against the estate allowed. He was nevertheless the legal administrator of the partnership estate; became such by virtue of his being administrator of the individual estate; and while he may not have had the right to enter upon the discharge of the duties of his trust until he gave the required security, yet that would not prevent him from presenting his own claim to the county judge for allow-

ance nor deprive that officer of his authority to allow it. The question to my mind is clearly untenable.

I am satisfied from an examination of the petition, schedule accompanying it, and the evidence relating thereto, that the county court should have granted the order to sell at least a part of the real property in order to discharge the residue of the claims against the estate. As to what part thereof should be required to be sold for that purpose, the county court can judge much more intelligently than this court is able to; and probably, as the estate is partnership property and must eventually be sold or partitioned between the partners, it would be better to order it all sold.

The judgments of the circuit and county courts will be reversed and the cause remanded for further proceedings in accordance with this opinion.