Motion to dismiss denied May 17, argued at Pendleton October 31,
    reversed and decree entered December 13, 1921, rehearing de-
    nied January 3, 1922.

# ACTON *v.* LAMBERSON ET AL.

### (202 Pac. 421; 202 Pac. 732.)

**Tenancy in Common—Holding of One Cotenant is Possession of All.**

1. A cotenant in possession holds possession for the benefit of
the other cotenants.

**Adverse Possession—Possession of Heirs not Adverse to Possession
    of Purchaser at Administrator's Sale.**

2. Possession of heirs is not adverse to a purchaser at an ad-
ministrator's sale for the payment of debts, because they take
subject to the payment of the ancestor's debts.

**Judgment—Directness of Attack Independent of Which Party At-
    tacks.**

3. Whether an attack upon a judgment or decree is direct or
collateral does not depend upon whether the attack is made by
plaintiff or defendant, in view of Section 390, Or. L.

**Judgment—Attack on Administrator's Sale Held Direct.**

4. In suit to quiet title by purchaser at administrator's sale,
where the answer, as authorized by Section 390, Or. L., attacked
the proceedings of the probate court and the acts of the adminis-
trator in obtaining an allowance of his own claim and selling the
real estate in question to satisfy it, *held,* that the answer, which
was in the nature of a complaint in equity, was a direct, and not
a collateral, attack on the probate proceedings in question.

**Executors and Administrators—Sale to Administrator's Wife Held
    Void.**

5. Where an invalid claim against a decedent was disallowed by
the decedent's administrator, and, after the administrator's removal,
the claimant had himself appointed administrator of the decedent's
estate, allowed his own claim, then waited for five years when he
procured an order for sale of decedent's realty, and sold it to his
wife, the sale was void, under Section 1276, Or. L., prohibiting pur-
chases, directly or indirectly, by administrators.

**Executors and Administrators—Purchase by Administrator or Execu-
    tor is Void.**

6. An executor or administrator is held to strict compliance with
Section 1276, Or. L., prohibiting purchases of the property of the
estate by an executor or administrator, directly or indirectly.

---

4. What are collateral attacks on judgments, see note in 23 Am.
St. Rep. 104.

5. On right of administrator or executor to purchase at his own
sale, see notes in 12 Am. Dec. 85; L. R. A. 1918B, 7.

Executors and Administrators — Purchase by Administrator's Wife not Conclusively Presumed for Herself.

7. Where administrator's wife purchases at administrator's sale, there is no conclusive presumption arising from the fact that she continued to hold the purchased property in her own name and did not transfer it to the administrator, that she purchased for herself, and that the purchase was not one indirectly by the administrator, in violation of Section 1276, Or. L.

Executors and Administrators—Fraudulent Purchaser at Administrator's Sale not Subrogated to Rights of Creditor on Vacating Sale.

8. Where administrator, to satisfy his own invalid claim, sold property of his decedent to his, the administrator's, wife, and the sale was set aside as violating Section 1276, Or. L., the wife, as purchaser, was not subrogated to the rights of creditor of decedent's estate; the sale being fraudulent.

ON PETITION FOR REHEARING.

Pleading—Allegation Held not a Denial of Guardianship at Time of Making Guardianship Sale as Alleged in Answer.

9. Where defendant in answer alleged that on March 11, 1908, S., then being the duly appointed, qualified, and acting guardian of an estate, and being in possession of it, filed in a certain County Court a petition in writing for an order of sale permitting him to sell land belonging to his minor wards, and plaintiff by reply admitted that on March 11, 1908, S. as guardian filed his petition for the sale of real estate, but denied his being in complete possession, and denied generally and specifically each and every other allegation contained in the answer, the allegation in the reply was not a denial that S. was duly qualified and acting guardian at the time of making the guardian's sale of the real estate.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This cause was tried as a suit in equity, and a decree rendered in favor of plaintiff for an undivided one-third interest in 225 acres of land and for $450 damages. Defendants appeal.

The case was originally commenced as an action at law for the possession of the real estate. The defendants filed an answer denying the material allegations of the complaint and set up two defenses. One of the defenses was by authority of Section 390, Or. L., which so far as material here provides that,—

"Bills of revivor and bills of review, of whatever nature, exceptions for insufficiency, impertinence, or irrelevancy, and cross-bills are abolished; but a decree in equity may be impeached and set aside, suspended, avoided, or carried into execution by an original suit; and in an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matter up by answer, without the necessity of filing a complaint on the equity side of the court; and the plaintiff may, by reply, set up equitable matter, not inconsistent with the complaint and constituting a defense to new matter in the answer. Said reply may be filed to an answer containing either legal or equitable defenses. The parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed. Equitable relief respecting the subject matter of the suit may thus be obtained by answer, and equitable defenses to new matter contained in the answer may thus be asserted by reply. When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed until the determination of the issues thus raised as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party."

The first defense alleges the following, in substance: Frank Cammann died intestate in the county of Malheur, Oregon, August 13, 1905. Prior to his death he was the owner in fee simple of the real property mentioned in plaintiff's complaint. He left surviving him, as his heirs at law, two daughters, Mona Cammann five years of age, and Maude Cammann two years of age. On January 29, 1908, Alex Smith, the grandfather of these children, was appointed by the

County Court as the guardian of the persons and estate of said minors, and letters of guardianship were duly issued to him. On March 11th, of that year, the guardian, being in possession of the land, by virtue of an order of the County Court sold the one-third interest of the wards in such real estate to Fred W. Cammann, and pursuant to the order of the County Court executed and delivered to the purchaser a guardian's deed to the property, which was duly recorded. Fred W. Cammann immediately thereafter entered into possession of the premises. On March 30, 1908, Fred W. Cammann and his wife sold and conveyed the land to defendant J. G. Lamberson by a deed which was duly recorded. Immediately thereafter defendants entered into the possession of the premises, and since the guardian's sale Fred W. Cammann and defendants have held the land under color of title openly, notoriously, uninterruptedly and adversely as against the plaintiff and all persons. Neither plaintiff nor her ancestors, predecessors or grantors, nor any or either of them, were seized or possessed of the land or any part thereof within ten years next prior to the commencement of the action. Alex Smith as such guardian held adverse possession of the land from about January 31, 1908, under claim and color of title.

Defendants further pleaded as an equitable defense substantially as follows: After the death of Frank Cammann, August 13, 1905, and on February 29, 1908, one J. D. Fairman was duly appointed as the administrator of the estate of Frank Cammann, deceased, and duly qualified as such. Plaintiff is the wife of Arley Acton. Arley Acton pretended to be a creditor of the estate of Frank Cammann, by virtue of an alleged promissory note executed by Frank Cammann,

deceased, January 5, 1903. Arley Acton never filed any claim with J. D. Fairman, the administrator. On September 21, 1908, J. D. Fairman resigned as such administrator and Arley Acton petitioned for the appointment and was appointed administrator of the estate of Frank Cammann, deceased, claiming to be a creditor of said estate, and qualified as such administrator. On July 29, 1909, Acton as administrator approved his claim against the estate wherein he claimed to be the owner and holder of the promissory note executed by Frank Cammann, deceased, for the sum of $394.

Defendants are informed and believe, and therefore allege, that the note was given without any consideration, and is therefore void; that if executed the same was done before Frank Cammann became twenty-one years of age and was not given for any of the necessities of life; that Frank Cammann repudiated the obligation and declined to pay the same both before and after arriving at the age of twenty-one years; that Arley Acton endeavored to collect the note from the guardian of Frank Cammann prior to his becoming of the age of majority; that the guardian refused to pay the same for the reason the note was void; that Arley Acton, knowing the note was void, and contrary to his duties as administrator, allowed the claim against the estate in July, 1909; that based upon such void and fraudulent claim and contrary to his duties as the administrator of the estate, Arley Acton petitioned for and obtained an order directing him as such administrator to sell the one-third interest of Frank Cammann in the 225 acres of land, and pretended to sell the same to Delia Acton, his wife; that the pretended sale was fraudulent and void and made for the purpose of defrauding the estate, and was in

truth and in fact made by Arley Acton as adminis-
trator to himself for his own use and purposes, con-
trary to his trust and for the purpose of defrauding
the estate; that thereafter Arley Acton, as adminis-
trator, executed and delivered to Delia Acton an ad-
ministrator's deed purporting to convey the undi-
vided one-third interest in the real property; and
that the deed was recorded and now constitutes a
cloud upon defendants' title to the land. Defendants
pray that the deed be set aside, held for naught, and
their title to the land be quieted; and that Arley Ac-
ton be made a party plaintiff; and for equitable re-
·lief.

Plaintiff by her reply denies that Alex Smith, the
guardian of Monna Cammann and Maude Cammann,
minors, was in possession of the real estate; chal-
lenges the sale of real estate made by the guardian;
denies all fraud and irregularities or improper con-
duct on the part of Arley Acton in making claim upon
the note or in selling the land; and in effect denies
that the statute of limitations had run against the
plaintiff's claim to the land.

The trial court made findings, reciting the pro-
ceedings regarding the sale of the land by the guar-
dian of the minor heirs of Frank Cammann deceased,
the former owner of the land; the execution of the
guardian's deed of the real property to Fred W.
Cammann; the conveyance of the land by Fred W.
Cammann and wife to defendant J. G. Lamberson;
that Lamberson and wife entered into possession of
the premises about April 1, 1908, and since that time
have held possession and farmed the land; that this
suit was commenced by plaintiff on March 9, 1918;
and that defendants have therefore acquired no title

to the premises by virtue of adverse possession or the statute of limitations.

The court further found in detail the proceedings in regard to the administration of the estate of Frank Cammann deceased, the sale of the one-third interest in the land by Arley Acton as administrator to satisfy the note for $394 and interest with a credit thereon of $90; the approval of the claim by Arley Acton as administrator, on July 22, 1909; the approval thereof by the county judge of Malheur County, Oregon, in 1909, but that through inadvertence and mistake the approval of such claim was not made a matter of record; that after the expiration of the term of office of the then county judge, based upon the affidavit of the former county judge the succeeding county judge made and entered an order approving the claim as of date, 1908; that the sale of the land was made by the administrator June 1, 1914, in accordance with the order of the County Court and in conformity with the published notice thereof; that plaintiff purchased the property for the consideration of $1,000, $250 cash and by giving a mortgage on the real property to the administrator for $750; that the sale by the administrator was regularly approved and confirmed; that in June, 1914, Arley Acton as such administrator, by direction of the County Court duly executed and delivered to plaintiff his administrator's deed to the real property; that the deed was duly recorded; and that the administrator duly filed his final account which was approved by the County Court, and he was discharged as administrator of the estate.

The court also found:

"That defendants are barred and estopped from questioning the proceedings, so had, commenced, and concluded in the County Court of the State of Oregon,

for Malheur County, in the matter of the estate of Frank Cammann, deceased, for the reason that the petition for the sale of said real property so filed by said administrator was in all respects regular and in proper form, and that the petition is the basis of sale and the order constitutes the decree of the court; that the petition filed therein, stated all jurisdictional facts and the order and decree of said court could not be questioned, except in a direct appeal from the original decree, and that defendants did not appeal from the order of said court; that defendants are barred and estopped from questioning as to whether the claim of Arley Acton had been allowed or approved by the said County Court, because said question is settled by the order of said court, based upon the due and regular petition of the said Arley Acton; that the attempt made by defendants in this proceeding, to attack the validity of said proceedings is a collateral attack upon the validity of said proceedings and defendants cannot maintain said collateral attack; that the testimony shows that Frank Cammann, the maker of the note to Arley Acton, had become of age, prior to the time of his death, and had not disaffirmed his obligation to pay said note, and had specifically promised in writing to pay the said note, after the said Frank Cammann had·become of legal age.

"That defendants have at no time offered, nor have they pleaded in this case, their willingness to pay the debts that have been satisfied by the sale of said real property, and that said sale could not in any event, be invalidated so as to defeat the payment of the just claim of Arley Acton, and indebtedness against the estate";

and that by reason of the wrongful withholding of said property by defendants plaintiffs have been damaged in the sum of $450.

REVERSED AND DECREE ENTERED.

For appellants there was a brief and oral argument by *Mr. P. J. Gallagher.*

For respondent there was a brief and oral argument by *Mr. R. W. Swagler.*

BEAN, J.—Counsel for defendants upon this appeal submit, and support by a wealth of authorities that,—

"If the County Court, in the guardianship matter, secured jurisdiction of the subject matter, the sale by the guardian to Fred Cammann was valid, and if there were any defects, either in the service of the notices or the failure to serve notices, they were cured by the order confirming the sale, and cannot be collaterally attacked."

With this general principle counsel for plaintiff agrees, but claims that the real property of a testator descends to the heirs subject to the testator's debts, and that the grantee of the heirs of Frank Cammann, deceased, stands in no better position than the heirs themselves; that the sale under order of the County Court by the administrator to pay the debts of the testator may completely divest the heir or grantee of the title to such real property: Citing Section 10125, Or. L.; *Worley* v. *Taylor,* 21 Or. 589 (28 Pac. 903); *Re Estate of Houck & Meyer,* 23 Or. 13 (17 Pac. 461); *Stadleman* v. *Minor,* 83 Or. 348 (155 Pac. 708, 163 Pac. 585, 983).

1, 2. It appears from the record that the adverse possession of the real property involved, held by the defendants, lacks four days of the statutory period of ten years required to obtain title to land by prescription. Before April 1, 1908, or for the four days mentioned, and for some time prior thereto the land

was in possession of Fred W. Cammann who was owner of one-third thereof. His brother Cleve Cammann owned one third and the minor heirs of Frank Cammann, deceased, owned one third of the 225 acres of land which was formerly owned by Philip Cammann, the grandfather of the minor heirs. Therefore the possession of the land was in Fred W. Cammann as a cotenant, who held the same for the other cotenants: 2 C. J., p. 75, § 56. Although the heirs of Frank Cammann, deceased, held possession of the land belonging to the father's estate, such possession was not adverse to a purchaser at an administrator's sale for the payment of debts, for the reason that such heirs take subject to the payment of the ancestor's debts. The law is tersely stated in 1 Cyc. 1055:

"Possession of heirs is not adverse to a purchaser at an administrator's sale for the payment of debts, because they take subject to the payment of the ancestor's debts.

"Heirs cannot acquire title to the land descended, as against the debts of the ancestor, by a claim of adverse possession as against the title descended."

It is further contended by the plaintiff that the administrator's sale of the land in question, having been made by authority of the County Court which had complete jurisdiction, and the sale confirmed, such proceedings cannot be assailed in this suit for the reason that it is a collateral attack. This claim is in conformity to the holding of the trial court, and we think is the first question for consideration.

Turning to authorities cited in plaintiff's brief, the case of *Morrill* v. *Morrill*, 20 Or. 96, 101 (25 Pac. 362, 23 Am. St. Rep. 95, 11 L. R. A. 155), contains a discussion of what constitutes a direct or collateral

102 Or.—31

attack upon a decree of court.   Mr. Justice R. S. BEAN there said:

"A collateral attack on a judgment is any proceeding which is not instituted for the express purpose of annulling, correcting or modifying such decree. (12 Am. & Eng. Ency. of Law, 177.)   The fact that the parties are the same, and that the plaintiff seeks to attack the decree by the allegation of the reply cannot change the rule or make the attack any the less a collateral one."

In the case of *Yeaton* v. *Barnhart,* 78 Or. 257 (150 Pac. 745), one of the latest decisions of this court upon the subject, among other things this court said:

"The County Court, having ordered a sale of the premises, necessarily decided that jurisdiction of the subject matter over which its authority extends had been secured in a proceeding based upon a proper allegation of the facts requiring an exercise of its power; and, it being thus competent to determine whether or not the facts set forth in the petition to sell the real property to pay the debts incurred by the deceased were adequate, the determination is conclusive against all the world, unless reversed on appeal or avoided for fraud in a direct proceeding: Woerner, Am. Law Admr. (2 ed.), § 145. * * "

As to whether an attack upon a judgment or decree is direct or collateral, the rule is stated thus, in 1 Bailey on Jurisdiction, 140:

"In fact the writer is of the opinion (though not conceded by many courts) that any attack which has for its object the setting aside and vacating of a judgment is a direct attack, whether in the same or an independent proceeding.   Any attack the object and purpose of which is to avoid the judgment, leaving it to stand as the judgment of the court which pronounced it, is a collateral attack.   Thus an action in equity to vacate and set aside a judgment is a direct attack; it directly attacks the judgment.

An action to restrain proceedings under the judgment, or to prevent the enforcement thereof is a collateral attack.''

This rule was approved by this court in *Christensen* v. *Lane Co.,* 90 Or. 401 (175 Pac. 845), where it was held that a complaint seeking to remove a cloud upon the title, and to set aside an order of the County Court opening a road across plaintiff's land, is not a collateral attack, but a direct attack upon the order of the County Court. In *Lieblin* v. *Breyman Leather Co.,* 82 Or. 22 (160 Pac. 1167), this court held that a suit to cancel a judgment and to enjoin the enforcement thereof by execution against land of which plaintiff claims to be the owner, is a direct and not a collateral attack upon the original judgment.

3. The essential allegations in a suit in equity for the purpose of annulling or setting aside a judgment or decree are usually contained in the complaint, instead of in an answer as in the case at bar. Section 390, Or. L., authorizing a defendant, in an action at law where the defendant is entitled to relief arising out of facts requiring the interposition of a court of equity, and material to his defense, to set such matter up by answer, plainly declares that equitable relief respecting such matter of suit may thus be obtained by answer, and equitable defenses to new matter contained in the answer may be asserted by reply. The statute also declares that ''the parties shall have the same rights in such case as if an original bill embodying the defense or seeking the relief prayed for in such answer or reply had been filed.'' The statute therefore in such a case, where matters are set up entitling a defendant to equitable relief gives such defendant the same right as though he were plaintiff in the suit, and also gives the plaintiff the same right as though

he were defendant in such suit. The question does not depend upon which of the parties first reaches the court house and files his pleading. An important change in the practice in this respect was incorporated into Section 390 by an amendment in 1917.

4. The answer referred to above unquestionably attacks the proceedings of the probate court and the acts of Arley Acton as administrator in obtaining and allowance of his claim and selling the real estate to satisfy the same. We do not understand that this is questioned by the counsel for plaintiff; but it is contended upon behalf of plaintiff that the attack upon the probate proceedings made by defendants in their answer is a collateral one. Tested by the authorities above referred to, the answer which is in the nature of a complaint in equity is a direct attack upon the probate proceedings in question.

5. The next question is, should the sale of the real property by Arley Acton as administrator be allowed to stand?

It appears that Philip Cammann, the former owner of the land, died leaving three sons, Frank Cammann the deceased, Fred A. Cammann and Cleve Cammann. His estate was administered, and John Zimmerman was appointed guardian of the minor sons. While Frank Cammann, deceased, was a minor he entered into a partnership business with Arley Acton. They had a few horses, perhaps a few more than sufficient for saddle-horses, and as stated were riding the range "slickearing." Fred A. Cammann, a brother of deceased, and a witness in this proceeding, not being desirous of using harsh language in regard to his deceased brother, states in effect that they were taking property that did not belong to them. We find no contradiction of this testimony. They secured

possession of several horses branded with eight different brands. About the time the authorities were investigating the matter Arley Acton sold whatever interest he claimed in the horses to Frank Cammann then a minor, and took the note mentioned for $394 on January 5, 1903. On account of the transactions Frank Cammann was indicted and left the state, going to Seattle, Washington, but was induced by his brother, Fred Cammann, to return to Malheur County where he was killed about August 11, 1905. On February 29, 1908, J. D. Fairman was appointed as administrator of his estate and duly qualified. The claim of Arley Acton for the amount of the note appears to be dated on April 8, 1908, but was never allowed by J. D. Fairman as administrator. It appears to have been filed with the clerk July 29, 1908. Fairman resigned in September, 1908, and Arley Acton, husband of plaintiff, was appointed administrator of the estate. All of the real property belonging to the estate had then been sold to defendant J. G. Lamberson, on March 11, 1908, for the sum of $1,000, which was expended for the care of the minors. Arley Acton resided in the vicinity where the land was located, and presumably knew of these proceedings. On July 22, 1909, Acton as administrator allowed his claim for the note. The matter was then permitted to slumber until April 8, 1914, when the administrator petitioned to sell the real estate, which was sold on June 1, 1914, by order of the County Court after issuance and service of citations and the publication of notice. Meanwhile J. G. Lamberson was improving the land, which when he purchased it embraced but twenty acres in cultivation. At the present time about fifty acres have been reclaimed from wild sagebrush land and planted to

alfalfa. The annual crops amount to about 200 or 250 tons of hay. It is not clear, however, whether in giving the amount of such crops the witness refers to the whole of the farm or the one-third interest involved. The sale of the land was made by the administrator to plaintiff Delia Acton, the wife of the administrator. It appears from the testimony of Arley Acton that she had a few cattle when they were married. Acton's and his wife's cattle were kept together. Acton states, "We just run them together." Her name was not on the assessment-roll for tax purposes. It is claimed that the cattle were sold and that Mrs. Acton's share of the proceeds paid a part of the purchase price.

Mrs. Acton was not a witness upon the trial. It seems she was in the town where the testimony was taken, but her husband, Arley Acton, testified in her behalf on cross-examination in regard to the sale as follows:

"Q. As I understand, she and you had some stock together in the spring of 1914 and you sold them to Billy Miller, and Billy Miller paid her and you for the cattle, or the stock?

"A. Yes, sir.

"Q. You put that, I presume, in your bank now?

"A. I don't know that we had a bank account. It was in the business there; I don't know just how we did do that.

"Q. You are not clear on that. You had the money in the business and you were in charge of the business, that is right, isn't it?

"A. Yes, sir.

"Q. Then, when you thought about selling this place to somebody you advanced this $250 out of the business, part of it was hers and part of it was yours, that is right, isn't it?

"A. Yes, sir.

"Q. And you gave it to her in cash, did you?

"A. Well, it was there, yes; we had the money there at the house.

"Q. Yes, I understand you had the money there at the house.

"A. Yes, sir.

"Q. And you took it and gave her the $250, did you, and started off down to Vale together?

"A. Yes, sir.

"Q. To buy the place; now then when you got to Vale along about the 1st of June, just tell the Court now what you did towards selling this place.

"A. I sold this place.

"Q. How did you sell it?

"A. I sold it at the courthouse.

"Q. Private sale or public auction?

"A. A public auction.

"Q. Yes, public auction sale, you got up and struck it off. How many people bid at that sale?

"A. There was just one bid.

"Q. Your wife made a bid?

"A. Yes, sir.

"Q. And she made the bid and took this same $250 and paid it over to you?

"A. Yes, sir."

Acton also testified thus:

"Q. You took the mortgage on the place for the $750? Then when she paid this mortgage off, Mr. Acton, did she pay you or did you just give her credit and consider that to be in the business?

"A. She paid me.

"Q. How?

"A. She paid me the money.

"Q. A check or currency or how?

"A. It was currency.

"Q. Now where did she get this currency from? Was that about the same procedure as before?

"A. Well, she had sold some steers and some cows.

"Q. Some of that partnership property that she and you had together?

"A. Yes. * *

"Q. How did she pay you? You say she gave you currency then for the $750 and the interest?

"A. Yes, sir. * *

"Q. Did you make any attempt to get the rent, issues and profits from that land from 1908 up until 1914?

"A. No, sir. * *

"Q. And these cattle that you sold, you had an interest in them, the cattle you sold to Chet Stallard?

"A. Yes, sir, it wasn't any—"

Cattle owned in the same way were sold to pay the balance of the purchase price of the land secured by mortgage. A construction of the testimony as favorable to plaintiff as can be made is, that the joint property of the husband and wife was used to pay for the real estate in question.

Section 1276, Or. L., provides among other things that,—

"The order of confirmation of sale in this chapter mentioned is conclusive as to the regularity of the sale, and no further. All purchases of the property of the estate by an executor or administrator, however made, whether directly or indirectly, are prohibited, and if made are void."

We think the testimony shows that the sale of the real property in question was made for the benefit of the administrator and comes within the prohibition of Section 1276.

The sale of the real estate in question made by Arley Acton as administrator of the estate of Frank Cammann, deceased, to Delia Acton, his wife, was made indirectly to Arley Acton himself, and was void. Therefore the plaintiff has no title upon which to maintain this action: *Lombard* v. *Carter*, 36 Or. 266 (59 Pac. 473); *Marquam* v. *Ross,* 47 Or. 374, 404 (78 Pac. 698, 83 Pac. 852, 86 Pac. 1); *Haymond* v.

*Hyer,* 80 W. Va. 594 (92 S. E. 854, L. R. A. 1918B, 1);
*Lagger* v. *Mutual Union Loan & Bldg. Assn.,* 146 Ill.
283 (33 N. E. 946).

In *Marquam* v. *Ross,* 47 Or. 404 (83 Pac. 859), this
court speaking by Mr. Justice R. S. BEAN, used this
language:

"The fiduciary character of the purchaser, when
the circumstances are such, that to allow him to
purchase for himself would tempt him to act for the
protection of his own interest and the consequent in-
jury of those whom, as trustee, he is bound to protect
and serve, will be sufficient. It is enough that there
is a conflict between duty and self-interest. The law
will not allow the matter of self-gain to stand as a
temptation to misconduct in the discharge of the
duty growing out of the fiduciary relation. A trustee
will not be permitted to subject himself to the temp-
tation which arises out of the conflict between the
interest of the purchaser and his duty as a trustee":
Citing authorities.

In a note to *Haymond* v. *Hyer,* [80 W. Va. 594 (92
S. E. 854)], L. R. A. 1916B, 1, at page 7, we find the
following:

"The rule is almost unanimous, both in the United
States and the British Empire, that an administrator
or executor may not purchase at his own sale of the
property belonging to the decedent's estate. In some
of the States this rule of the common law has been
embodied in statute (Section 1276, Or. L.). The rule
is an application of the general rule against the pur-
chase by trustees of property belonging to the trust
estate. It is founded upon the unfairness that is
likely to follow upon a sale in which the same person
is both vendor and purchaser. 'Lead us not into
temptation' has been said to be the underlying prin-
ciple. Accordingly the presence of actual fraud in
the transaction is not necessary to render the sale
improper."

6. Among all of the trusts that of a person occupying the position of an executor or administrator of the estate of a deceased person, should be held to a strict compliance with the statute prohibiting a purchase of the property of the estate, either directly or indirectly, by such executor or administrator, and a court of equity should hold such a sale, if made, void as the statute declares it. An order of confirmation of a sale made in contravention of the statute is conclusive only as to the regularity of the proceeding of sale. A court of chancery, when the matter is properly brought before it, should not permit the property of minor heirs to be wrongfully taken from them in violation of the law.

7. The trial court, in ruling upon this point, recognized the effect of the statute, expressing the opinion that when the wife having purchased the property continued to hold the same in her own name and not transfer it to the administrator, the presumption was she had purchased for herself. However this presumption may be, the testimony clearly shows that the purchase was made for the benefit of the administrator. While the fact that a reconveyance to the administrator would perhaps be conclusive evidence that the sale was made for his benefit, we do not think that is the only manner of showing that a sale is made by an administrator indirectly for his own benefit. Otherwise all that would be necessary in such case, in order to circumvent the statute, would be for the wife to make the purchase of the real estate sold by her husband as administrator and hold the same until the statute of limitations has run. The sale in question was clearly in violation of our statute.

8. It is contended upon behalf of plaintiff that the defendant should have offered to compensate plaintiff for the amount paid for the real estate, or that plaintiff should be subrogated to the rights of the creditor of the estate if the sale is set aside. The authorities do not appear to be agreed as to a *bona fide* purchaser having such a right, many authorities holding that the right of subrogation on a void sale does not exist. The authorities are practically unanimous in support of the doctrine that this right does not exist where fraud has entered into the transaction. It is stated in 11 R. C. L., page 377, Section 450, that,—

"It should be recognized that the right of subrogation in the jurisdictions in which it is recognized is an equitable right, subject to being forfeited by any fraud or wrongful conduct of the purchaser."

In *Huse* v. *Den*, 85 Cal. 390 (24 Pac. 790, 20 Am. St. Rep. 232), the syllabus reads:

"Purchasers of land at void sales by executors can claim no rights of subrogation where they know that the land was subject to a trust, and that the executors had no authority to sell. * * *"

We read in 11 R. C. L., page 376, Section 449:

"It may be noted in this connection that in order to assert an equity of subrogation in property that has been sold at an administrator's sale, the facts must be pleaded, and that when the purchase money derived from the sale has not been paid out of the hands of the personal representative in liquidation of debts, but remains in his hands, the purchaser, instead of being entitled to subrogation against the heirs, will be entitled to a decree against the executor or administrator for the amount so held."

"It has also been held that a decree for the sale of land to pay debts is not *res judicata* as to the validity of the debts and the insufficiency of personal

property to pay them as against the heir or his successor in interest, who may contest a motion to revive such order of sale on the ground that the debts are barred by the statute of limitations." 11 R. C. L., p. 380, § 454.

As we read the record, from the inception of the transaction when Arley Acton unloaded his portion of the ill-gotten gain in the horse business upon Frank Cammann, the whole matter is steeped in fraud. The court of equity should not vary the rule in order to recompense Arley Acton in the matter. That would be the effect of subrogating plaintiff to his right as a creditor of the estate.

The plaintiff should look to Arley Acton, her husband, for reimbursement if she has expended any of her money in the purchase. It is doubtful if a dollar changed hands in the transaction. The land is attempted to be applied in satisfaction of the administrator's note which should have been acted upon while Mr. Fairman was administrator of the estate, and probably would have been if it had been a valid claim.

The briefs of counsel upon both sides are thorough and complete, and furnish all assistance that could be expected. We have examined the record with care.

The decree of the Circuit Court will be reversed, and one entered setting aside the sale and deed of the administrator of the one-third interest in the land and quieting the title of defendants to the real property described in the answer herein.

REVERSED AND DECREE ENTERED.

Rehearing denied January 3, 1922.

ON PETITION FOR REHEARING.

(202 Pac. 732.)

*Mr. R. W. Swagler,* for the petition.

*Mr. P. J. Gallagher, contra.*

In Banc.

By a petition for rehearing plaintiff challenges the sale made by the guardian of the persons and estate of Monna Cammann and Maude Cammann, minors, mentioned in our former memorandum, for the reason that such sale was void on its face, and claims that the record discloses that such guardian had been discharged prior to the time of making the guardian's sale.

As we understand the briefs and record, this question was not an issue in the case. Referring to the abstract of record we find the allegation in regard to the guardian, following a recitation of the petition for the appointment and order of the County Court appointing the guardian, to be as follows:

"That on the 11th day of March, 1908, the said Alex Smith, then being the duly appointed, qualified and acting guardian of the estate of Monna Cammann and Maude Cammann, and being in complete possession of said estate, and particularly said land, filed in the County Court of Malheur County, Oregon, a duly verified petition in writing, praying for an order of sale, permitting him to sell all of the right, title and interest of the minors, Monna Cammann and Maude Cammann. * * *"

This paragraph proceeds to narrate the issuance of the order of sale, the description of real estate, the

proceedings of the sale and the execution of the guardian's deed.

The appointment of the guardian is admitted by the plaintiff in her reply. Paragraph 5, of which we have quoted a portion, was replied to by plaintiff as follows:

"Replying to paragraph 5 thereof plaintiff admits that on the 11th day of March, 1908, the said Alex Smith as Guardian of the estate of Monna Cammann and Maude Cammann filed his petition for the sale of the real estate described therein, but denies that said guardian was then in the complete possession of said estate or exercised any acts of possession thereover, and denies generally and specifically each and every other allegation therein contained."

9. It should be remembered that many of the issues in this case were raised by the answer and reply. We do not understand the plaintiff by her reply intended to deny that Alex Smith was the duly qualified and acting guardian at the time of making the guardian's sale of the real estate involved herein. Neither did we obtain any information from the briefs, or any of the proceedings in the case, that such question was made an issue. It is now claimed that the date of the filing of the order of discharge of the guardian was prior to the sale of the real estate. We have before us only a copy of the order approving the final account of the guardian and discharging that official, made as we understand by consent of counsel without the certificate of the clerk, or as it is termed, "copied into the record." It appears to be a copy of the original order, and not a transcript of the County Court journal entry, and bears no date, which probably plainly appears in the court's journal. In so far as we are able to discern from the record there is a clerical error in the copy

of the date of the filing of the order, as the guardian acted as such for a long time after that date, was recognized as, and stated by the County Court to be such official, in various proceedings in the guardianship matter. Alex Smith filed an annual account of his transactions as guardian more than a year after the date upon which the claim of his discharge is based. The matter is not an issue. It comes too late for further consideration. The record shows that the County Court had complete jurisdiction to authorize the sale of the real estate in question by the guardian of the minors named, and the sale was valid as held in our former opinion.

Counsel for plaintiff urges a reconsideration of the questions relating to the sale of the land made by Arley Acton as administrator of the estate of Frank Cammann, deceased, the father of the minor heirs, Maude and Monna Cammann. Strong argument is made in regard to the distinction between actual fraud and constructive fraud on the part of the administrator in the matter of such a sale. In our former memorandum we intended to hold, and wish to make it clear, that the record plainly shows both actual and legal fraud in the matter, on the part of Arley Acton as such administrator; hence the distinction becomes unimportant. The plaintiff, the wife of the administrator and the purchaser, must have had knowledge of the main facts of the transaction. A quotation from a note in 26 C. J. 1059, seems apropos:

"Fraud is kaleidoscopic, infinite. Fraud being infinite and taking on protean form at will, were courts to cramp themselves by defining it with a hard-and-fast definition, their jurisdiction would be cunningly circumvented at once by new schemes beyond the definition. Messieurs, the fraud-feasors, would like nothing half so well as for courts to say they would

go thus far and no further, in its pursuit." *Stone-mets* v. *Head,* 248 Mo. 243, 263 (154 S. W. 108).

"If there were a technical definition of fraud, and everything must come within the scope of its words before the law could deal with it as fraud, the very definition would give to the crafty just what they wanted, for it would tell precisely how to avoid the grasp of the law." 2 Parsons on Contracts, p. 769 (quote *Winter* v. *Bandel,* 30 Ark. 362, 373).

No good purpose would be served by further discussion of the case.

The petition for rehearing is denied.

REHEARING DENIED.