Argued March 17, reversed April 28, rehearing denied June 16, 1925.

## GEORGE F. KEANE ET AL. v. CITY OF PORTLAND ET AL.

(235 Pac. 677.)

**Eminent Domain—Municipality must Comply Strictly With Terms of Charter in Exercising Power.**

1. Municipality, in exercise of sovereign power of eminent domain, is tribunal of limited and special jurisdiction, and must comply strictly with terms of its charter.

**Eminent Domain—Acquisition of Jurisdiction by Giving Notice in Statutory Manner must Affirmatively Appear on Direct Attack.**

2. When condemnation proceedings by municipality are challenged directly, as in suit to enjoin widening of street, it should affirmatively appear from record that jurisdiction was acquired by giving notice in statutory manner, and if want of jurisdiction affirmatively appears, it is immaterial whether proceeding be considered collateral attack.

**Eminent Domain—Jurisdiction cannot be Upheld on Presumption of Publication and Mailing of Notice as Provided by City Charter.**

3. Jurisdiction to condemn land cannot be upheld on presumption that notice was published and mailed as provided by city charter.

---

1. Right of municipal corporation to exercise power of eminent domain without legislative authority, see note in Ann. Cas. 1912C, 199. See, also, 10 R. C. L. 196.

2. Necessity of notice of eminent domain proceedings to land owner, see note in 4 Ann. Cas. 903. See, also, 10 R. C. L. 186.

Pleading—Doubt as to Sufficiency of Allegations of Want of Notice
Held Removed by Answer.

4. Any doubt as to sufficiency of allegations of want of notice
of condemnation proceedings *held* removed by answer affirmatively
showing failure to mail notice to plaintiffs as required by Portland
charter, Section 323.

Eminent Domain—Actual Knowledge of Condemnation Proceedings
not Equivalent to Statutory Notice.

5. Actual knowledge of condemnation proceedings is not equiva-
lent to statutory notice.

Eminent Domain—Condemnation Proceedings Held Void for Failure
to Give Notice to Record Owners.

6. Proceedings to condemn land for widening of street *held* null
and void for want of jurisdiction by reason of failure to give
notice to record owners, as required by Portland charter, Section
323.

Constitutional Law—Courts cannot Inquire into Motives Actuating
Council in Providing for Widening of Streets.

7. Necessity, expediency and extent of appropriation of land by
city for street widening purposes are legislative, not judicial ques-
tions, and courts cannot inquire into motives actuating council, nor
interfere with its discretion, unless convinced that power delegated
has been abused for benefit of private interests.

Eminent Domain—Damages not Considered in Suit to Enjoin Con-
demnation of Land for Street Widening Purposes.

8. Question of damages is not proper matter of inquiry in suit
to enjoin condemnation of land for street widening purposes, plain-
tiffs' remedy, if dissatisfied with damages awarded, being by appeal
to Circuit Court.

Eminent Domain—Owners Erecting Building in Good Faith, After
Notice of Resolution Declaring Intention to Condemn Land, En-
titled to Compensation for Improvements.

9. Land owners erecting building in good faith and not for
purpose of enhancing damages, after notice of passage of resolution
declaring city's intention to take land for street purposes, but before
passage of ordinance authorizing appropriation, *held* entitled to com-
pensation for improvements made.

---

5. See 21 R. C. L. 1263.

6. See 10 R. C. L. 186.

7. Necessity of taking property for public use as legislative or
judicial question, see note in 42 Am. St. Rep. 406. See, also, 10
R. C. L. 183.

9. Right to compensation for improvements placed on land
after condemnation proceedings begun, see note in 17 Ann. Cas. 1033.

Right to allowance for improvements made with knowledge prop-
erty would be acquired for public use, see note in 36 L. R. A. (N. S.)
273. See, also, 10 R. C. L. 142.

**Eminent Domain—Measure of Damages for Taking Land for Street Purposes is Actual Cash Market Value at Time of Passage of Ordinance.**

10. Measure of damages in condemnation proceedings is actual cash market value of land at time of taking, which in case of land taken for street purposes, is time of passage of ordinance appropriating land.

**Estoppel—City Approving Building Plans Through Department, and Issuing Permit, Estopped from Setting up Violation of Building Line Restriction as Ground for Denial of Compensation.**

11. City approving building plans and specifications, and issuing building permit through its department of public works, *held* estopped to set up violation of building line restrictions as ground for denial of compensation for value of building in condemnation proceedings.

**Municipal Corporations—Grantees may Build Where They Please in Absence of Building Line Restrictions.**

12. In absence of building line restrictions in deed, grantees are entitled, as matter of law, to build on property where they see fit.

See (1) Eminent Domain, 20 C. J. 881.    (2) Eminent Domain, 20 C. J. 928, 929, 941, 1064.    (3) Eminent Domain, 20 C. J. 1064.    (4) Pleading, 31 Cyc. 714.

From Multnomah: G. F. SKIPWORTH, Judge.

In Banc.

This is a suit to enjoin the defendant City of Portland from widening Ladd Avenue and East Harrison Street and to have declared null and void an ordinance appropriating certain land for the purpose above stated. The proposed improvement involves the taking of the greater part of lot 28, block 25, in Ladd's Addition, owned by plaintiffs and upon which there is now located a store building erected at a cost of approximately $15,000. The property in controversy is located between Ladd Avenue and East Harrison Street where the same converge

10. Damages or injuries for which compensation must be made in eminent domain, see notes in 31 Am. Dec. 373; 88 Am. Dec. 113; 4 Am. St. Rep. 399; 9 Am. St. Rep. 144; 19 Am. St. Rep. 459; 22 Am. St. Rep. 50; 85 Am. St. Rep. 291. See, also, 10 R. C. L. 128.

toward what is designated in the record as "Central Park," which is 200 feet in diameter and is surrounded by a circular paved street 36 feet in width. Central Park may be likened to the hub of a wagon-wheel, and the eight streets radiating therefrom in all directions to its spokes. Ladd Avenue is one of the main arteries of traffic leading to the heart of the city.

Plaintiff George F. Keane, upon application to the city, was issued a building permit on January 8, 1923, and soon thereafter commenced construction of a store building, which he had contracted to lease for a period of five years at a rental of $200 per month. About three days after commencing excavation for the foundation of the building, and while the same was in progress, the city caused a "Stop Work" sign to be posted on the premises and work thereon suspended while negotiation for settlement of the controversy involved herein was pending. However, all effort at compromise came to naught, and the city, on January 23, 1923, by resolution, declared its intention to widen the streets above mentioned "on account of the dangerous traffic conditions existing thereon," and, pursuant to its charter directed the city engineer to make a survey, plat and report showing, among other things, a description of the property sought to be appropriated, the name of the owner or owners thereof, the amount of damages that should be awarded for such appropriation, and the boundaries of the district benefited and to be assessed for such improvement. Notwithstanding this action on the part of the city, plaintiffs resumed construction of the building and completed the same on March 28, 1923. On April 14, 1923, the city engineer filed his report as directed, making an award of $2,735 for damages

sustained and offsetting against that amount the sum of $6 as special benefits. In this report, which was adopted by ordinance June 20, 1923, Ladd Estate Co., plaintiffs' grantor, was named as reputed owner of the land to be appropriated.

Plaintiffs do not question the power of the city under its charter to appropriate private property for public use, but assert that, while the proceedings instituted are ostensibly for the purpose of widening the above-mentioned streets, the real purpose or motive of the city is to prevent the operation of a grocery-store in a residential district, regardless of the fact that all restrictions in reference thereto expired in 1917. It is further contended by the plaintiffs that no notice was given to them, prior to the passage of the above ordinance, of any hearing relative to the taking of their property or the award of damages therefor, and that the proceedings had by the city are null and void on account of thus failing to obtain jurisdiction. Finally, it is alleged that the amount of damages awarded by the city as of the date of the passage of the resolution is not that just compensation contemplated by law, and that the value of the property taken should be determined as of the time the ordinance was passed and after completion of the building. The city denies the charge of bad faith, and claims that the necessity, extent and expediency of the appropriation sought to be made are legislative and not judicial questions, and that plaintiffs, after notice of the adoption of the resolution, continued construction of the building at their peril, and should not thus be permitted to enhance damages. As to the amount of the award, it is also contended by defendants that it is not reviewable in this proceeding, and can be considered only

on appeal to the Circuit Court, as provided by charter. Concerning the matter of notice, defendants challenge the sufficiency of the complaint, and also contend that the proof fails to substantiate the pleading in that respect. As a further answer, defendants allege:

"That the plaintiffs herein, on December 27, 1922, obtained a deed for said lot 28 in said block 25 from the Ladd Estate Company, which was then the owner of said property, but plaintiffs failed to record said deed until April 19, 1923; that the city engineer at the time of the preparation of said report and the filing of the same was ignorant of the plaintiffs' rights in and to said property, and prior to April 19, 1923, there was no record officially disclosing the rights of the plaintiffs thereto, but such records indicated that said Ladd Estate Company was the owner thereof and by reason thereof said engineer in said report entered the name of said Ladd Estate Company as the reputed owner of said property and failed to enter the names of the plaintiffs and in consequence thereof the auditor failed to mail any notice to the plaintiffs, but said matter was a matter of general public notoriety in said city and greatly discussed by the property owners in said Ladd's Addition and in the public press and plaintiffs well knew of said proceedings and of the filing of said report and the proceedings thereafter taken in time to have filed their objections thereto and taken an appeal from the action of the council upon said report."

The pleadings also put at issue the question as to whether the building erected violated certain alleged building line restrictions. Plaintiffs in their reply, aside from denying the existence of any such restrictions, allege that the defendants are estopped from charging a violation thereof for the reason that the building was constructed strictly in accordance

with the plans and specifications submitted to and approved by the city.

On the issues thus briefly stated the lower court dismissed the suit and awarded costs and disbursements to defendants. Plaintiffs appeal.

REVERSED.   REHEARING DENIED.

For appellants there was a brief and oral argument by *Mr. W. H. Powell.*

For respondents there was a brief and oral argument by *Mr. Frank S. Grant,* City Attorney, and *Mr. L. E. Latourette,* Deputy City Attorney.

BELT, J.—1. It is fundamental that a municipality, in the exercise of the sovereign power of eminent domain, is a tribunal of limited and special jurisdiction, and must comply strictly with the terms of its charter in respect thereto.

2. When its proceedings are challenged by direct attack as in the instant case (*Acton* v. *Lamberson et al.,* 102 Or. 472 (202 Pac. 421, 202 Pac. 732); *Christensen* v. *Lane Co.,* 90 Or. 401 (175 Pac. 845); *Lieblin* v. *Breyman Leather Co.,* 82 Or. 22 (160 Pac. 1167); *Morrill* v. *Morrill,* 20 Or. 96 (25 Pac. 362, 23 Am. St. Rep. 95, 11 L. R. A. 155), it should affirmatively appear from the record that jurisdiction was acquired by giving the notice in the manner and method prescribed by statute: *Chapman* v. *Hood River,* 100 Or. 43 (196 Pac. 467); *Jones* v. *City of Salem,* 63 Or. 126 (123 Pac. 1096); *Bank of Columbia* v. *Portland,* 41 Or. 1 (67 Pac. 1112); *Northern Pac. Terminal Co.* v. *Portland,* 14 Or. 24 (13 Pac. 705).

3. It is immaterial whether this proceeding be considered a collateral attack, as contended by counsel for defendants, if it affirmatively appears that juris-

diction was not obtained: *Northern Pac. Terminal Co.* v. *Portland, supra.* Defendants claim the benefit of presumption that its proceedings were regular, and that notice was published and mailed as by charter provided, but it is elementary that jurisdiction cannot be acquired by indulging in presumptions.

It is urged that the following allegations in reference to notice are insufficient:

"That previous to the passage of the aforesaid ordinance, these plaintiffs were not notified by the auditor or any other officer, employee, or agent of the said defendant City of Portland of the date that said council would hear said engineer's report, nor that such report had been made or filed, nor of the amount of damages proposed to be awarded for plaintiffs' said property, nor of the time when or place where written objections might be filed against such proposed appropriation; and these plaintiffs had no knowledge that such report had been filed, or that a hearing would be had thereon, or of the passage of said ordinance."

4. Any doubt as to the sufficiency of the complaint relative to the matter of notice is removed by the answer of defendants concerning that phase of the case. In fact, it affirmatively appears therefrom that the auditor "failed to mail any notice to the plaintiffs," as required by the following section of the charter:

"Section 323. Within thirty days after the filing of such report the auditor shall cause a notice to be published for a period of ten successive publications in the city official newspaper, stating that such report is on file in his office subject to examination, giving the date when the same was filed, the probable cost of such proposed street or streets or change, a statement of the district embracing the property proposed to be assessed therefor and notifying all persons interested to present in writing their objections to said

report, if any they have, and that said objections, if any there be, together with said report, will be heard by the council on a date specified in such notice, not less than ten days after the date of the first publication of said notice. It shall also be the duty of the auditor forthwith to send by mail postpaid to each of those designated in the engineer's report a notice stating the probable total cost of such street or streets, or change, a brief description of the property in which such person is interested, a statement of the amount proposed to be assessed against such property, the time within which written objections may be filed against such proposed appropriation and assessment, and the date when the council will hear such report and objections, and, if such person be named as owner or party interested in land to be taken, the amount of damages proposed to be awarded for such property. If the address of any such person be unknown to the auditor, and if such person have an agent whose name and address is known to the auditor, he shall mail such notice to such agent; otherwise, he shall mail it to the owner addressed at Portland, Oregon.''

5. It will not suffice to say that plaintiffs had actual knowledge of said proceedings. Knowledge is not equivalent to statutory notice: *Wright* v. *City of McMinnville*, 59 Or. 397 (117 Pac. 298); *Bitting* v. *Douglas Co.*, 24 Or. 406 (33 Pac. 981); *Minard* v. *Douglas Co.*, 9 Or. 206; *Rice* v. *Wellman*, 5 Ohio C. C. 334.

6. It is true at the time the city engineer filed his report Ladd Estate Company appeared as record owners of the property under consideration, but ever since condemnation proceedings were instituted by the city, and for some time prior thereto, plaintiffs or their tenant has been and is now in actual possession of the lot sought to be appropriated. On January 5, 1923, when written application was made to the city for a building permit, it disclosed that G. F.

Keane, plaintiff herein, was the "owner of record," and his address was given as "500 E. 38 No." Furthermore, when notice is alleged to have been mailed, as required by charter, plaintiffs were the record owners, as their deed from Ladd Estate Company had been recorded on April 19, 1923. Mr. Keane testified unequivocally that he did not receive any notice from the city of the taking of his property, and there is no evidence to the contrary. It follows that the city did not obtain jurisdiction, and the proceedings had, so far as they pertain to the plaintiffs herein, are null and void.

7. We agree with the city in its contention that the necessity, expediency and extent of the appropriation are legislative and not judicial questions: *Smith et al.* v. *Cameron et al.*, 106 Or. 1 (210 Pac. 716, 27 A. L. R. 510), and numerous cases of this court therein cited. As stated by Mr. Justice BEAN in *State ex rel.* v. *Hawk et al.*, 105 Or. 319 (208 Pac. 709, 23 A. L. R. 1217):

"When the power to take private property for public use has been conferred by the legislature, it rests with the grantee to determine whether it shall be exercised, and when and to what extent it shall be exercised, provided, of course, that the power is not exceeded or abused. Courts cannot inquire into the motive which actuated the authorities, or enter into the propriety of constructing the particular improvement" — citing 1 Lewis, Eminent Domain (3 ed.), § 370.

As above stated, we are not permitted to inquire into the motives that actuated the council in legislating to widen the streets in question. This is not a case where private interests are directly benefited under the guise of the exercise of the power of eminent domain. There can be no doubt that the property taken is for a public use. Courts are extremely re-

luctant to interfere with the discretion exercised by
grantees of such sovereign power as to the extent
and expediency of the appropriation, and will not do
so unless convinced there has been an abuse of the
power delegated, which is not so in this case.

8. We are of the opinion, as claimed by counsel for
respondents, that the question of damages is not a
proper matter of inquiry in this suit for injunction.
We are here concerned with the legality of the pro-
ceedings to appropriate plaintiffs' property, and not
with the amount of the award. If plaintiffs were not
satisfied with the damages awarded, they should have
appealed to the Circuit Court for a determination of
that question.

9. However, since further litigation is possible, we
deem it advisable to decide whether damages should
have been assessed at the time the city determined
that matter or when, as contended by plaintiffs, the
ordinance was passed. Defendants assert that no
compensation should be allowed for improvements
made after notice of the passage of the resolution
whereby the city declared its intention to take the
property for street purposes. The question is pre-
sented as to whether owners of property, acting in
good faith, are to be denied the beneficial use and
enjoyment of the same before the city finally ordains
to take it. We think not: *City of Portland* v. *Lee
Sam*, 7 Or. 397; and cases listed in note, 36 L. R. A.
(N. S.) 273. In contemplation of law the property
involved herein was not appropriated until the ordi-
nance was passed, on June 20, 1923, and until that
time plaintiffs had the right to all of the attributes
of ownership. It would be a travesty on justice to
hold that as owners of property they were obliged
to suspend all work on the building for a period of
about five months and await the uncertain action of

the council in determining whether it would adopt the report of the city engineer. Cases cited involving bad faith, as where buildings are moved on to property pending condemnation proceedings, are not in point. We give no sanction or approval to what has been called in the books "house planting." Courts do not countenance fraud. Plaintiffs acted in good faith, and the building erected was not for the purpose of enhancing damages. Before the city had commenced proceedings it had granted a building permit to plaintiffs, and they had contracted to lease for a period of five years the building to be erected. The record viewed in its entirety refutes any inference of bad faith on the part of the plaintiffs. Respondents claim that *City of Portland* v. *Lee Sam, supra,* is overruled by *State ex rel.* v. *Hawk et al., supra;* but in this we do not agree, as the case last cited is under an entirely different statutory proceeding.

10. This court has never departed from the rule in condemnation proceedings that the measure of damages is the actual cash market value of the land at the time of the taking. In the Hawk case the land was, in contemplation of law, taken at the time of the commencement of the action. In the case at bar it is deemed to have been taken when the city passed its ordinance appropriating the land.

11, 12. Relative to the question of award of damages it is asserted the plaintiffs have violated certain building line restrictions, and by reason thereof no compensation need be made for the value of the building. There is no merit in this contention. Assuming, but not deciding, that the defendant city has a legal right to complain of such alleged violation, it is clearly estopped from doing so in view of the fact that the building plans and specifications were approved by its "Department of Public Works," and

there was issued a building permit by it to the plaintiffs to erect the building where it now stands.    There are no restrictions whatever in the deed from Ladd Estate Company to the plaintiffs, and it would seem as a matter of law that they are entitled to build on their property where they see fit: 1 Lewis, Eminent Domain (3 ed.), § 227.   Cases cited in respondents' brief are not in point on this question, for the facts therein stated disclose an encroachment on street and not building lines.

The decree of the lower court dismissing the suit for injunction is reversed, and it is here decreed that the ordinance in question and all proceedings based thereon are null and void, that the defendants be enjoined from appropriating plaintiffs' land under the proceedings had, and that plaintiffs recover their costs and disbursements herein.

REVERSED AND DECREE ENTERED.   REHEARING DENIED.