[Filed November 7, 1887.]

## S. LILLIENTHAL & CO. APPELLANTS, v. A. P. HOTAL-ING CO. ET AL., RESPONDENTS.

REPLY — WHAT CANNOT BE PLEADED IN. — A plaintiff cannot plead in his reply matter which would be cause for an original action.

JUDGMENT — CREDITORS' RIGHTS OF. — Respondents and appellants having obtained separate judgments against one V. C., the appellants applied to the respondents, whose judgments were prior to that of appellants, to unite with them in a suit to set aside a prior judgment of one H., against said V. C., which the respondents refused to do; but entered into an agreement with H., whereby they received a note from him and gave him a receipt for the same, specifying that it was given to pay their judgments, and that if the property was sold under execution for cash, they should receive the same and surrender up the note; but if H. bid in the property they were to hold the note in lieu of their judgments. The appellants then began suits against H. and the respondents to have his judgment declared fraudulent, and to obtain priority over the judgments of respondents. The property of V. C. was sufficient to satisfy the judgment of H. and the respondents. Upon trial the judgment of H. was found to be fraudulent. *Held*, (1) That if the H. judgment was fraudulent, the other respondents, having a subsequent lien, did not lose their priority of lien in consequence of their refusal to unite with the appellants in such suit, nor by endeavoring to obtain payment thereof through the agreement with H. (2) That the note given them could not be considered as having paid their judgments. (3) That the fact that they refused to join with the appellant in a suit to set aside the H. judgment, and entered into the arrangement with H., did not taint their judgments with fraud. (4) That this was not a case where the appellants would be entitled to a priority of lien over the respondents, as in a case of discovery of equitable assets.

APPEAL from Multnomah County.  Affirmed.

*Williams, Ach & Wood,* for Appellants.

The acts of the respondents who had obtained judgments were subsequently fraudulent, and the fraud tainted the whole proceeding. (*Gibbs* v. *Neeley*, 7 Watts, 307; *Serfoss* v. *Fisher*, 10 Pa. St. 184, 185.)

The judgments of respondents were paid by the note. (Freeman on Judgments, §§ 463–468.)

*Alex. Bernstein,* for Respondents.

The reply introduces a new cause of action, and the demurrer thereto should have been sustained. (*Durbin* v. *Fisk*, 16 Ohio St. 533; *School District* v. *Caldwell*, 16 Neb. 68; *Bernheimer* v.

*Marshall,* 2 Minn. 78; *Webb* v. *Bidwell,* 15 Minn. 279; *Hatch* v. *Coddington,* 32 Minn. 92.)

A creditor whose rights are not injured by a debtor's transfer of property cannot complain that the transfer was fraudulent. (*Barnet* v. *Knight,* 7 Colo. 365.)

Unless the judgments therefor are fraudulent and void at their inception, it matters not what disposition was made of them. (Freeman on Judgments, § 512; *Mayer* v. *Woodall,* 35 Tex. 687; *Stone* v. *Towne,* 91 U. S. 341.)

THAYER, J.—It appears from the facts in the case that on the twentieth day of October, 1886, one Fanny A. Holder commenced an action in said Circuit Court against one Vincent Caravita, upon three promissory notes executed to her by Caravita. And that on the twenty-second day of October, 1886, she recovered a judgment therein by confession against Caravita for the sum of $3,232, with interest thereon at the rate of ten per cent per annum, from said twentieth day of October, 1886, $375 attorney's fees, and the costs and disbursements of the action. That on the same day of the rendition of said judgment execution was issued thereon, and a levy made, by virtue thereof, upon Caravita's property, consisting principally of a stock of liquors and cigars in the city of Portland. That on said twenty-second day of October, the respondents, the A. P. Hotaling Co., a private corporation, G. Ginnochio & Co., Frappoli, Berges & Co., and E. Goslinsky & Co., severally commenced actions in said Circuit Court against Caravita, and in each of said actions an attachment was issued and levied upon said property on the day of the commencement of said actions, but subsequent to the levy of the Holder execution. That the appellant, also, on said twenty-second day of October, commenced an action against Caravita, in which an attachment was issued and levied upon said property, but subsequent to the levy of the said execution and of the attachments of the respondents. The several claims upon which the actions in favor of said respondents and appellants were commenced appear to have been valid claims arising out of the sale of articles made by them respectively to the said

Caravita.    Judgments were duly recovered upon each, upon the third day of November, 1886, and an order of sale of the attached property taken in each of the cases, and an execution was duly issued upon each of said judgments and levied upon the said property.    The judgments in favor of the respondents are comparatively small, aggregating only $1,015.25, while that of the appellants amounted to $6,606.16.    The property was entirely insufficient to satisfy all the claims; that it amounted in value to less than $4,000.

The appellants, evidently, were convinced that Mrs. Holder's claim was a sham, and that her judgment recovered thereon was fraudulent, and requested the said respondents to unite with them in a suit to set it aside, which they refused to do.    It appears that the said respondents' claims were placed in the hands of Alexander Bernstein, Esq., an attorney at law, and their attorney herein, for collection, and that Mrs. Holder's pretended claim was represented by J. M. Bower, Esq., also another attorney at law, who conducted the proceedings for Mrs. Holder, as her attorney in commencing the action, and in obtaining the judgment in her favor against Caravita.    The property was advertised for sale upon the Holder execution for the ninth day of November, 1886.    It appears that on or about the third day of November, 1886, and after the appellants had requested said respondents to unite with them in a suit to set aside the Holder judgment, Mr. Bernstein called upon Mr. Bower in regard to the business, and the two went to Holder's place of business, where they met Mrs. Holder's husband, Joseph A. Holder, and made arrangements that the amount of the said respondents' judgments, and of the said Holder's judgment, should be bid for the property at the sale thereof, and that if any one bid more than that they would let such bidder take the property, and the said judgments would be paid out of the proceeds.    If not, Bernstein was to bid in the property for the amount mentioned, and transfer it to said Joseph A. Holder, provided he would give a note for the amount of the said respondents' claims, and secure it by a chattel mortgage on the stock and fixtures.    That in pursuance of that arrangement an instrument in writing was

drawn up by Mr. Bower, and signed by Mr. Bernstein, of which the following is a copy:—

"PORTLAND, OREGON, 9th November, 1886.

"Received of Joseph Holder and Fanny A. Holder a note of even date herewith for $1,031, made and executed by said Joseph Holder and Fanny A. Holder, payable to my order at the Portland National Bank, and payable four months after date. Said note is given to pay the following claims and judgments, exclusive of costs and expenses taxed:—

| | | |
|---|---:|---:|
| A. P. Hotaling Co. v. Caravita | $ 175 | 25 |
| Ginnochio & Co. v. Same | 215 | 75 |
| Frappoli, Berges & Co. v. Same | 188 | 00 |
| E. Goslinsky & Co. v. Same | 452 | 00 |
| | $1,031 | 00 |

"And in case the sale of the stock of V. Caravita is sold for cash, I agree to deliver the said Holders their note, and they to pay cash the full amount thereof. And in case I become the purchaser by giving to the sheriff receipts for judgments against said Caravita, I agree to deliver the same to said Holders forthwith upon said Holders giving a chattel mortgage on the said stock, securing said note and such other claims as may rank equally with said note.

"ALEX. BERNSTEIN, Attorney at Law."

On the fifth day of November, 1886, the appellants commenced their suit against the said Caravita, Fanny A. Holder, the said respondents, and the Napa Valley Wine Co. and James Zanello. The last-named defendants, the Napa Valley Wine Co. and Zanello, were impleaded on account of some subsequent interest or claim they had upon the property, but they took no part in the litigation. The object and purpose of the appellants' suit was to set aside and annul the Holder judgment, and restrain its enforcement, and decree their lien by virtue of their attachment to be a prior lien to any and all liens of the other creditors of the said Caravita, and that their judgment be first satisfied out of the proceeds of the sale of the attached property. There is

no allegation in the complaint against the legality of the said respondents' said judgments, or which is calculated in anywise to impeach them. They allege, however, that they had requested said respondents to join with them as plaintiffs in the suit, but that the former had refused to do so, and, wherefore, they were made defendants therein.

An answer was filed on the part of Fanny A. Holder, by Messrs. McDougall & Bower, and Alexander Bernstein, as her attorneys, also upon the part of the said respondents by said Alexander Bernstein, their attorney. Said answers were filed separately. The answer of Mrs. Holder contains denials of knowledge or information sufficient to form a belief as to the appellants' claim, and of the proceedings alleged in the complaint to have been had thereon, and denies positively that her action against Caravita was not instituted against him collusively or fraudulently, or with the intent to hinder, delay, or defraud creditors of the said Caravita, or any one else, and the answer of the said respondents contains similar denials of said claim, and the proceedings had thereon; also the same character of denials of the alleged collusion and fraud, and affirmative allegations as to the issuance of their attachments and their priority to that of appellants.

The Circuit Court granted an order in the suit restraining further proceedings upon the Holder judgment during the pendency of the suit, which the said respondents, by their attorney, said Alexander Bernstein, subsequently and on the ninth day of November, 1886, moved the court to modify. The said motion was founded on the pleadings and proceedings in the suit, and was supported by certain affidavits made on behalf of said respondents. The modifications sought, and which the said affidavits were made to obtain, were to the effect that the sheriff might be permitted to accept the bids of the judgment creditors on their judgments prior to the appellants' judgment, or that, upon the plaintiffs in the suit filing an undertaking, an injunction order of the court issue, according to· law and the regular practice of the court, restraining the sheriff from proceeding with the sale under the execution of the said Fanny A. Holder, or of

the execution of any of the other defendants in the suit, until the issues in the suit were heard and determined.

The appellants, some time after said respondents' answer was filed, filed a reply thereto, in which they denied the priority of the respondents' attachments, and set up affirmatively that said respondents had been fully paid their claims; also, that they and the Holders had conspired and confederated together for the purpose of defrauding the creditors of Caravita, and appellants especially, and had agreed to place all possible obstacles in the way to prevent the collection of appellants' said judgment against Caravita; and that since the commencement of the suit herein, and before the filing of their answer herein, the said respondents, in pursuance of said confederation, collusion, and alleged agreement, have received from the said Fanny A. Holder and Joseph A. Holder a promissory note in full of the said claims against said Caravita, and did agree at the time of the receipt thereof by them, to hinder and delay the appellants in the collection of their demands.

The case was referred to a referee to take and report the evidence, and his findings of fact thereon, and conclusions of law. The referee, after taking the testimony, found that the said three promissory notes executed by Caravita to the said Fanny A. Holder, and upon which the said judgment was recovered, were without consideration, and were given, and the judgment obtained thereon, with intent to hinder, delay, and defraud the creditors of said Caravita, and that said judgment was wholly fraudulent and void. He also found that the judgments of the said respondents were valid judgments; that none of them had been paid; that neither of said respondents had conspired or confederated to defraud any of Caravita's creditors, nor been guilty of any fraud, and that each of them had a lien on said attached property prior in time to any lien thereon of appellants; which report having been confirmed by the said Circuit Court, the decree appealed from was entered.

The appellants' counsel contend that the refusal of said respondents to unite with them in the suit to set aside the judgment in favor of Fanny A. Holder against Caravita, the

arrangement entered into between said respondents and Joseph A. Holder, through their respective attorneys, as before mentioned, and attempted modification of the order staying proceedings, are evidence of a conspiracy between the said respondents and the Holders to defraud the appellants; that it was an attempt to use said judgments for a fraudulent purpose, and to delay the appellants in the collection of their claim; that the execution by Joseph A. and Fanny A. Holder of their promissory note to said Alexander Bernstein, as shown in the writing signed by him, operated as a payment of the respondents' judgments. Said counsel also claim that the appellants are entitled to have their judgment preferred to that of the said respondents for having instituted the suit, uncovered the fraud of Caravita and Mrs. Holder, and removed an obstruction which stood in the way of the collection of any of the judgments.

It is claimed by the respondents' counsel that the appellants cannot avail themselves of the benefit of the matters charged in the reply, as they were not alleged in the complaint, and I think there is much force in the claim. The complaint, impliedly, at least, admits the validity of the judgments referred to, and makes no attack whatever upon their verity. A plaintiff in an action or suit must recover, if at all, upon his complaint. The facts constituting his cause of action or suit must there be stated; a reply can serve him no purpose except to controvert or avoid new matters set up in the answer. The old rule, that every pleading on the part of the plaintiff, subsequent to the declaration, and on the part of the defendant, subsequent to the plea, could only be used to fortify, respectively, the declaration and plea, is still in force, in principle, and it matters not what may be alleged in a reply; if the complaint fails to state a cause of suit, the plaintiff will not be entitled to any relief.

The appellants' claim to priority of lien on account of their having commenced and prosecuted their suit is based upon the rules of law, which obtain where equitable assets are discovered by suit in the nature of a creditor's bill, and made applicable to the satisfaction of a judgment where they could not have been reached by the ordinary means provided by law.

This is not that kind of case. Here an equitable obstruction has been interposed in the way of the appellants' and respondents' collection of their claims, which had become a lien by law upon the property, having priority in right by reason of their priority in time. As between the appellants and said respondents, the latter's judgments were first in time, and they acquired a legal lien by virtue of the levy of their attachments. The levy of the Holder execution was prior to both, and the appellants had more interest in getting it out of the way than the respondents had. The latter may in fact have had no interest in having the Holder judgment set aside. They certainly did not, if the property would bring a sufficient sum at the sale to pay Holder's judgment and their own. I do not think this is a case where the appellants can gain a priority as claimed. The rule alluded to never extended to the displacement of a legal existing lien. (*McKinney* v. *Farmers' National Bank*, 104 Ill. 180.) It only gave the plaintiff the first right on account of his superior vigilance, when in all other respects the parties stood equal. The appellants' claim to priority upon that ground must therefore be denied, and if the rules which govern pleadings in the respect before referred to are enforced, it will dispose of their claim upon the other ground.

Independent of that, however, I cannot see how said claim can be maintained. The said Caravita, who had been engaged in the liquor and cigar business, failed, leaving insufficient assets to liquidate his liabilities, and a race of diligence between his creditors, of course, was commenced. He had executed the fraudulent notes upon which action was commenced before his creditors had notice of his failure, but they were not tardy when they ascertained the fact of his having failed, and doubtless looked only to the collection of their respective claims. The claims of the said respondents were small, and they were justified in endeavoring to secure them with as little expense as possible, and their attorney, Mr. Bernstein, evidently thought that the better and less expensive course would be to make the arrangement he did with Mr. Bower, to have the property sell for enough to pay the claims he represented in excess of the Holder

judgment. He received the note of Holder and his wife for the amount of said claims, and agreed to bid the amount of his clients' judgments and the Holder judgment for the property at the sale, and if it were struck off to him to let Holder have it, and take a mortgage on it to secure the note; and I have no doubt but that the said respondents were anxious that this plan should be carried out.

If, however, such arrangement was calculated to defeat or delay the appellants in the collection of their claim, and was entered into for that purpose, it would be void. But whether the court would in that case have the power to destroy or postpone the said respondents' liens upon the property, under and by virtue of the levy of their attachments, I do not undertake to determine, as I do not believe the testimony and proofs warrant such conclusion. In the first place, the arrangement could not affect the appellants' rights, did not, in any way, impair their remedy in the collection of their claims; and in the second place, the respondents had no apparent motive in depriving the appellants of any legal right to which they were entitled, and proof of their entering into the arrangement they did through their attorney did not establish the existence of such motive on their part. Nor did the execution of the note by Holder and wife to Bernstein, for the amount of the respondents' judgments, constitute a payment of the judgments. It was a conditional affair, and was not to have effect unless the property was sold and bid in by Bernstein, which condition never happened. It is insisted that the agreement to turn the property over to Joseph A. Holder, in case Bernstein bid it off, was in fraud of appellants' rights; but I do not understand why Bernstein would not have had the right to do with it as he pleased if he bought it, nor how the appellants would have had any further interest in the property after it was sold on the execution. The respondents may have had information that the Holder claim was fraudulent, but if they had, they were not required to raise the question. They had the right to waive if they saw fit.

I have examined the several matters complained of by the appellants, and am not able to discover any grounds for chang-

ing the decree appealed from. The brief filed herein on their behalf exhibits an intensity of feeling upon the part of counsel who prepared the same, and perhaps the circumstances of the case were such as to have inspired it; but the facts fail to show that a fraudulent use was made of the respondents' said judgments, or that there was any conspiracy between the respondents, or those who represented them, to hinder, delay, or defraud the said appellants, or that they were defrauded in any particular.

The decree appealed from must therefore be affirmed.