Submitted on briefs July 27, affirmed October 19, rehearing denied
November 16, 1926.

## GEORGE W. SAUL v. CONTINENTAL CAS-UALTY COMPANY.

### (250 Pac. 227.)

**Insurance.**

In action on accident and sickness policy, evidence that notice
that disability arose from disease was given 20 days, as required by
policy, *held* sufficient to take case to jury. (Affirmed by divided
court.)

---

Accident Insurance, 1 **C. J.**, p. 471, n. 1, p. 473, n. 7, p. 511, n. 51.
Health Insurance, 29 **C. J.**, p. 282, n. 62, 69, p. 283, n. 73, p. 284,
n. 11.
Insurance, 33 **C. J.**, p. 7, n. 97, p. 11, n. 3, 4.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

The plaintiff recovered judgment against the de
fendant on a policy of group insurance issued to the
Oregon-Washington Railroad & Navigation Company
for the benefit of its employees, he being its tie and
timber inspector. The policy is a combined accident
and sickness indemnity. Plaintiff fell on a street of
Portland and fractured his left femur. For some
time prior to the fall and ever since, plaintiff has been
suffering from arteriosclerosis and high blood-pres-
sure. The indemnity was payable in monthly in-
stallments of which the defendant paid 11 on a
claim for accidental injury. The plaintiff refused to
accept the 12th installment because it required him to
receipt in full for the entire amount due him. Under
the policy he claimed that he was entitled to further
installments on the ground that his injury was due to
bodily disease. The company refused further pay-

See 14 **R. C. L.** 1333, 1335.

ments because it contended that plaintiff had not given notice in writing as required by the policy of disability resulting from bodily disease. The portions of the policy pertinent are as follows:

"If the employee is disabled for more than seven days through bodily disease, or by reason of bodily injury incurred through violent, external and accidental means while he is not engaged in the actual performance of the duties of his occupation as such employee, but which in either case, wholly and continuously disables him from the performance of all the duties of his occupation, an indemnity consisting of half monthly wages of such employee for the period not exceeding 12 months, during which he shall be so disabled and in case of sickness shall also be confined to the house by reason of such disability. 'Confined to the house' as here used means such confinement as will prevent leaving the house for any purpose of business or pleasure but not the leaving of it solely for medical treatment or healthful exercise in its immediate vicinity.

"In the event of payment of indemnity under the last preceding paragraph by reason of disability resulting from bodily disease, if it shall further be that the employee has, within the time covered by the payments there given, become totally and permanently disabled for life from engaging in any work or occupation for wages or profit, an additional indemnity consisting of half monthly wages for a further period of 12 months.

"Indemnity shall, in no instance, be at a less rate than five dollars per week, nor shall it exceed in the aggregate twenty-five hundred dollars as a payment to any one employee as a result of any one accidental injury or of any one sickness. But one indemnity will be payable for disability resulting concurrently from accidental injury and disease, and all indemnity payments except those accrued will cease at the death of the injured or sick employee."

The assigned errors are based on rulings on the admission of testimony, giving of certain instructions, refusal to give other instructions requested by the defendant and denying defendant's motions for judgment of nonsuit and for directed verdict. Other facts necessary to understand the reasons for our decision will be found in the opinion.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the name of *Mr. E. L. McDougal.*

For respondent there was a brief over the name of *Messrs. Lord & Moulton.*

COSHOW, J.—Defendant alleges error in the ruling of the court admitting the correspondence between the plaintiff and officials of the O.-W. R. & N. Company in his behalf over defendant's objection. The correspondence was offered for the purpose of proving notice was given to the defendant that plaintiff was suffering from bodily disease. The proofs of plaintiff's disability are based upon accidental injury. After the 11 installments were paid and the defendant insisted upon a receipt in full for the twelfth installment, according to the terms of the policy, plaintiff insisted that his disability was the result of bodily disease which entitled him under the policy to 12 more payments. The amount plaintiff was entitled to receive was $117.50 per month for 12 months in case of accident and the same amount for 24 months in case of permanent disability caused by disease. Proofs of disability were required to be given to the defendant monthly. The first report was made on December 30, 1922, and in answer to the question, "How did the accident happen?" re-

119 Or.—38

cited "Slipped on icy pavement." That report also contains the following information given by plaintiff's physician:

Question No. 9. "How do you understand he was injured?"

Answer. "Walking on icy pavement he slipped and fell."

Question No. 17. "Has claimant any chronic or constitutional disease or physical defect or infirmity; and if so what?"

Answer. "Yes, arteriosclerosis."

The report made March 23, 1923, embodies a statement from plaintiff's employer in which it is stated that he understands the accident to have happened by a fall on a sidewalk. The physician's statement in the same report states the injury to be "fracture neck of femur, paralysis of left leg." The several reports and correspondence objected to were produced by defendant's attorney on compulsion while an involuntary witness for the plaintiff. The correspondence is not between the defendant and its attorney. It was between the plaintiff or those representing him and the defendant. The fact desired to be proven was that written notice was given to the defendant within 20 days after he became disabled of the plaintiff's disability arising from bodily disease. The policy does not require any particular form of notice. The notice given within eight days after the accident and disability of the plaintiff arose contains the statement that plaintiff was suffering from the disease of arteriosclerosis. The physician and surgeon of the plaintiff's employer testified that the fall was the result of this disease. The correspondence introduced was not privileged. It is direct evidence of the fact sought to be proven, namely: That notice was given to the defendant of the bodily disease suffered

by the plaintiff.   It was competent for that purpose. The case of *Dakin* v. *Queen City Fire Insurance Co.,* 59 Or. 269 (117 Pac. 419), is not in point as clearly appears from this statement taken from the opinion in page 273 of the official report:

"The letters chiefly relate to arguments adduced by the respective parties for and against the payment of the loss produced by the fire, and the reasons for and effect of not making proof of loss within the time prescribed."

It is claimed by the plaintiff that the required notice was in said correspondence.   The correspondence was the very best evidence of the fact sought to be proven: *Blunt* v. *National Fidelity & Guaranty Co.,* 93 Neb. 685 (141 N. W. 1033, 1034).   It was in the possession of the defendant and produced by it upon the demand of the plaintiff.   The case of *Emerson* v. *Western Automobile Indemnity Assn.,* 105 Kan. 242 (182 Pac. 647), is not in point for the reason that the correspondence admitted was between the defendant and its attorney.   Such correspondence is privileged.   Some of the correspondence in the case at bar was not material but was not harmful or prejudicial.

The principal defense is based upon the want of notice of plaintiff's sickness.   Out of this contention issue all the assignments of error.   The reports were sent by the plaintiff or someone for him as required by the defendant.   The reports apparently base his claim for indemnity on account of the fall on the sidewalk.   These reports as shown above also contained the statement in different language that plaintiff was suffering from bodily disease.   In some of the reports his disease is referred to as paralysis, in others arteriosclerosis and others high blood-pressure.   In some of the reports two of the said diseases

are mentioned. The testimony of the plaintiff at the trial was to this effect:

"And I felt quite dizzy at that time. It was Saturday, and held onto a store rail, an outside store rail several times, by reason of this feeling. When I reached Sixth Street on my way over to Fourth Street I was stricken with this stroke of paralysis or whatever it was and sunk down on the curb and broke my hip."

The testimony regarding plaintiff's mental condition was admissible. It was pertinent to the issue as to whether or not his mistake in reporting on form furnished by defendant for injury by accident was made in good faith. His surgeon testified that he supposed that the form used was immaterial as long as the facts were shown.

The court instructed the jury to the effect that unless the plaintiff gave notice of his disability from sickness within 20 days after becoming so disabled, he could not recover and that an honest mistake made in assigning the cause of his disability would not prevent him from recovering, unless the defendant was misled to its injury thereby.

The contention of the defendant, as near as we can gather from the record and the brief of the defendant, is that the court erred by submitting to the jury the question of whether or not notice of disability by sickness was given. The instructions were as favorable to the defendant as it was entitled to. It is a general rule of law that a mistake honestly made in a notice or proof of loss and seasonably corrected, would not defeat recovery, unless the insurer was misled to its injury by such mistake. If the insurer after receiving proper notice and proof of loss was not prejudiced and had ample opportunity to investigate conditions so as to ascertain

the true state of facts, it could not refuse payment because of a mistake in the cause of disability.

The following authorities sustain the instructions which were given to the jury and complained of: 1 C. J. 471–473; 33 C. J. 7, § 650; 33 C. J. 11–13; § 657; 14 R. C. L. 1335, § 505; *Van Eman* v. *Fidelity & Casualty Co.*, 201 Pa. 537 (51 Atl. 177–179); *United States Casualty Co.* v. *Hanson*, 20 Colo. App. 393 (79 Pac. 167, 178); *Phillips* v. *United States Ben. Soc.*, 120 Mich. 142 (79 N. W. 1–3; *Wildey Casualty Company* v. *Sheppard*, 61 Kan. 351 (59 Pac. 651, 653, 47 L. R. A. 650); *Jarvis* v. *Northwestern Mut. Relief Assn.*, 102 Wis. 546 (78 N. W. 1089, 72 Am. St. Rep. 895); *Hill* v. *Aetna Life Ins. Co.*, 150 N. C. 1 (63 S. E. 124); *Travelers' Insurance Co.* v. *Melick*, 65 Fed. 178–187 (12 C. C. A. 553, 27 L. R. A. 629).

In the last case cited in the opinion by Judge SANBORN the rule is stated thus:

"The better rule upon this subject is that statements of this nature in proofs of loss are binding and conclusive upon the party who makes them until, by pleading or otherwise, he gives the insurance company reasonable notice that he was mistaken in his statement, and that he will endeavor to show that the death was the result of different cause from that stated in his proofs. After the insurance company has received due notice of this fact, the proofs have the probative force of solemn admissions under oath against interest, but they are not conclusive."

These conclusions dispose of all the assignments of error. The motions for judgment of nonsuit and for a directed verdict were properly denied. There was sufficient evidence of notice having been duly given the defendant of the disability of plaintiff from sickness to take the case to the jury. The defendant

had ample opportunity for investigating fully the
condition of plaintiff. The fact that the plaintiff was
confined to the hospital or the house for 11 months
was evidence that his fractured femur was not the
sole cause of his disability. That fracture should
have healed within about three months. The defend-
ant was advised by the surgeon caring for the plain-
tiff that his disability was permanent. Every report
made to the defendant informed it that plaintiff was
suffering from either arteriosclerosis, high blood-
pressure or paralysis. The policy fixing the defend-
ant's liability contains this sentence: "But one
indemnity will be payable for disability resulting con-
currently from accidental injury and disease and
all indemnity payments, except those accrued, will
cease at the death of the injured or sick employee."
The evidence in this case indicates that plaintiff's
disability was the result of both accident and disease.
The fall broke the femur. The disease caused him
to fall. The broken femur would have healed under
ordinary circumstances in about three months. His
disability increased from the time of the accident,
evincing that his disability was caused by the disease.
The mistake of the plaintiff in using the form pro-
vided by the defendant for accidents instead of
disease, while competent evidence of an admission
against his interest, was not conclusive when shown
to have been used by inadvertence under the belief
that the form was not material and where evidence
of the true state of facts was given to the defend-
ant. The defendant introduced no evidence, makes
no claim that any fraud has been committed, or that
it has been in anywise injured by the mistake. It
has made no payments by reason of the mistake that
it would not have paid had the notice and proofs
shown from the first that the disability was caused

by disease. Both the accident and the disease concurred in causing the disability. Under the record the question was one of fact which was submitted to the jury with proper instructions. The fact was resolved against the defendant.

Statutory notice is not involved in this case. *Keane* v. *City of Portland*, 115 Or. 1 (235 Pac. 677), is not in point. Here the question is the sufficiency of the notice given: 1 C. J. 477, §§ 193, 194; 14 R. C. L. 1333, 1335, §§ 504, 505. The notice here required is based on contract, not on statute.

· The policy, under which the plaintiff claims, contains this statement:

"Indemnity shall, in no instance, be at a less rate than five dollars per week, nor shall it exceed in the aggregate twenty-five hundred dollars as a payment to any one employee as a result of any one accidental injury or of any one sickness."

It is conceded that the defendant had paid to the plaintiff the sum of $1,292.50. The plaintiff claims the additional sum of $1,527.50 which would make an aggregate of $2,820. According to the terms of the contract of insurance in no event is the plaintiff entitled to recover in this action in excess of $2,500. It is necessary therefore to reduce the judgment to the sum of $1,207.50 with interest at the rate of 6 per cent per annum from December 16, 1924. In all other respects the judgment is affirmed. Neither party will recover costs and disbursements in this court.

McBRIDE, C. J., and BURNETT and BELT, JJ., dissent.

BEAN and BROWN, JJ., concur.

RAND, J., took no part in this decision.

The court being evenly divided the judgment is affirmed.          AFFIRMED.   REHEARING DENIED.

BURNETT, J., Dissenting.—As an employee of the Oregon-Washington Railroad & Navigation Company, the plaintiff was insured under a blanket policy of the defendant, The Continental Casualty Company, against injury by accident. By that instrument the defendant promised to pay half monthly wages of the employee for certain periods, under the following conditions expressed in the policy and applicable to the case presented:

"III. If the employee is disabled for more than seven days through bodily disease, or by reason of bodily injury incurred through violent, external and accidental means while he is not engaged in the actual performance of the duties of his occupation as such employee, but which in either case, wholly and continuously disables him from the performance of all the duties of his occupation, an indemnity consisting of half monthly wages of such employee for the period not exceeding 12 months, during which he shall be so disabled and in case of sickness shall also be confined to the house by reason of such disability. 'Confined to the house' as here used means such confinement as will prevent leaving the house for any purpose of business or pleasure but not the leaving of it solely for medical treatment or healthful exercise in its immediate vicinity.

"IV. In the event of payment of indemnity under the last preceding paragraph by reason of disability resulting from bodily disease, if it shall further be that the employee has, within the time covered by the payments there given, become totally and permanently disabled for life from engaging in any work or occupation for wages or profit, an additional indemnity consisting of half monthly wages for a further period of 12 months.

"V. Indemnity shall, in no instance, be at a less rate than five dollars per week, nor shall it exceed in the aggregate twenty-five hundred dollars as a payment to any one employee as a result of any one

accidental injury or of any one sickness. But one indemnity will be payable for disability resulting concurrently from accidental injury and disease, and all indemnity payments except those accrued, will cease at the death of the injured or sick employee.

"VI. Indemnity shall not be payable unless the employee or the employer shall give written notice to the Continental at its office in Chicago, Illinois, of the injury or sickness on which claim may be based, within twenty days after the date of the accident causing the injury or after the commencement of disability from sickness."

While the policy was in force with these conditions, the plaintiff fell on a slippery pavement in the City of Portland on December 16, 1922, while he was not engaged in the actual performance of his duties as employee and fractured his left hip. On December 30, 1922, he made his first report of the accident, in which he stated that while crossing the street he slipped on icy pavement and broke the femur of his left leg. A surgeon of the Oregon-Washington Railroad & Navigation Company made a report on January 4, 1923, indorsed upon and accompanying the plaintiff's report of the accident, in which the former declared that the precise nature and extent of the injury was a fracture of the neck of the left femur, and that the plaintiff was walking on icy pavement and slipped and fell on the pavement. He also stated, in answer to this question: "Has claimant any chronic or constitutional disease or physical defect or infirmity; and if so, what?" "Yes, arteriosclerosis." Thereafter, on March 23, 1923, the plaintiff made a report of his continued disability, accompanied by a report of the purchasing agent of the railroad company, in which the latter stated that the accident happened because the claimant fell on the sidewalk.

A surgeon of the railroad company reported the precise nature and extent of the injury as "fracture, neck of femur (left); paralysis of left leg," likewise stating that the claimant had no chronic or constitutional disease or physical defect or infirmity. Again, on April 11, 1923, the plaintiff reported his continued disability, in which the purchasing agent reported that the claimant slipped and fell on the sidewalk, and the surgeon reported as before, "fracture neck of femur and paralysis of left leg," saying also that the claimant had arteriosclerosis. On May 17, 1923, a similar report was made by the plaintiff in which the agent said plaintiff "slipped and fell on sidewalk" and the surgeon reported "paralysis of left leg— fracture of neck of femur," likewise stating that the claimant had no chronic or constitutional disease or physical defect or infirmity. Again, on June 21, 1923, appended to the plaintiff's report of June 16th, the agent reported that the accident happened because the plaintiff "slipped and fell on sidewalk." The surgeon reported as before, "paralysis of left leg— fracture neck of femur," and that there was no chronic or constitutional disease or physical defect or infirmity. Again, on July 25, 1923, the plaintiff reported his disability and appended thereto, dated August 4th, the agent declared that the accident happened because the plaintiff "slipped on ice on street corner," and the surgeon reported "fracture of neck of femur; paralysis of left leg" and that there was no chronic or constitutional disease or physical defect or infirmity "except arteriosclerosis." On August 30, 1923, the agent reported in like terms that plaintiff "slipped and fell on sidewalk" and the surgeon reported "fracture of neck of femur; arteriosclerosis; partial paralysis." On September 25, 1923, ap-

pended to the plaintiff's statement of disability, the agent reported that plaintiff "slipped and fell on sidewalk," and the surgeon reported "fracture of neck of femur; arteriosclerosis." On October 19, 1923, the agent reported that plaintiff "slipped on sidewalk" and the surgeon reported the precise nature and extent of the injury to be "fracture of femur" and that he had no chronic or constitutional disease or physical defect or infirmity. To his report of November 26, 1923, the agent added, under date of December 3d, that the plaintiff "slipped on sidewalk, falling and fracturing hip," and the surgeon stated that the precise nature and extent of the injury was "fracture of neck of femur; paralysis of left leg" and that the claimant had no chronic or constitutional disease or physical defect or infirmity. Lastly, to a report of disability dated December 22, 1923, is appended the report of the agent under date of December 31, 1923, that the plaintiff "slipped and fell on sidewalk," and the surgeon, under date of December 26th, reported the precise nature and extent of the injury to be "fracture of head of femur (left) and paralysis of left leg" and that he had no chronic or constitutional disease or physical defect or infirmity.

With this record of his statements to the company, the plaintiff by his complaint alleged the execution and delivery of the policy of insurance; that it contained, among other things, the third and fourth clauses already quoted; declared he was receiving a salary of $235 per month, and goes on to state as follows:

## "IV.

"That on or about the 16th day of December, 1922, while said policy was in full force and effect, plain-

tiff became afflicted with a bodily disease, to wit: an affliction in the nature of a stroke of apoplexy due to high blood pressure, which brought about a paralysis of the left side of plaintiff's legs and body, and as a result thereof, plaintiff fell while walking on the streets of the city of Portland, and as a further direct result of said bodily disease plaintiff was disabled for more than seven days through bodily disease while not engaged in the actual performance of the duties of his occupation as an employee of the railroad company for which plaintiff was then and there working, and which was mentioned in said policy of insurance, and said disability continued for the full period of twelve months, and plaintiff was therefore confined to the house for said full period of twelve months as the same is defined in Paragraph II hereof, and plaintiff made proof of said disability according to the terms of said policy of insurance, and sufficient to satisfy defendant, and defendant proceeded to pay plaintiff indemnity for the period of eleven months under the terms of said policy, and within the time covered by said payments plaintiff became and was and is totally and permanently disabled for life from engaging in any work or occupation for wages or profit, and plaintiff heretofore duly made proof of such total and permanent disability, save and except that in the first proofs furnished to defendant, plaintiff inadvertently referred to his disability as resulting from said fall on the streets, but thereafter plaintiff furnished due and sufficient proof to defendant that his said disability resulted from said bodily disease hereinbefore mentioned, and did not result from accidental injury, and defendant prior to the commencement of this action, waived the making of more specific proof at the time of the commencement of said disability, and fully investigated plaintiff's claim of disability due to bodily disease, and has received full and complete advice and information in respect thereto, and said disability permanently and totally disables plaintiff for the balance

of plaintiff's life from engaging in any work or oc-
cupation for wages or profit.''

The plaintiff further avers, in substance, that the
defendant paid to him during the year 1923 eleven
payments of $117.50, making a total of $1,292.50, and
claims thirteen additional payments of $117.50. The
terms of the policy quoted in the complaint are ad-
mitted by the answer. The affliction with bodily dis-
ease is denied and the quoted portions of the com-
plaint are likewise denied. The payments made are
admitted but all the other allegations claiming addi-
tional payments are denied by the answer. By fur-
ther answer the defendant alleges its corporate ex-
istence and the policy which it sets out in full as an
exhibit to its answer, and makes these further allega-
tions:

## "III.

"That the said plaintiff, George W. Saul, was an
employee of the O. W. R. & N. Company and on or
about December 16, 1922, sustained an accidental in-
jury to a fractured hip while slipping on a sidewalk,
said accidental injury being what is termed as a non-
occupational accident and entitling the said plaintiff
to indemnity of one-half his monthly wage for a
period of twelve months following the accidental
injury.

## "IV.

"That in accordance with said accidental injury the
plaintiff herein submitted proofs and in accordance
with the terms of said policy contract and the rules
of the defendant herein only for accidental injury
and a claim was presented for accidental injury and
payments made for a period of eleven months, and
that a proof of loss in accordance with the procedure
above outlined for the twelfth month was submitted
by the plaintiff herein and a check in due course is-
sued in accordance with said proof for the sum of

$117.50, being the final payment due plaintiff on the said contract of insurance and proof submitted, and that plaintiff refused to accept said check or cash the same and defendant herein tenders into court the sum of $117.50 for full settlement of plaintiff's claim, in accordance with said contract above mentioned and the proofs of accidental injury hereinbefore submitted to the defendant herein, and that no proofs or notices in accordance with the contract of insurance has been submitted to the defendant herein covering the alleged claim of the plaintiff."

The reply denies all the allegations of the answer except as stated in the complaint and, as opposed to paragraphs III and IV of the answer above quoted, makes the following allegations:

"I.

"That the disability suffered by him on or about December 16, 1922, was due to disease, as in his amended complaint herein set forth, and that proofs of said disability were furnished to said defendant satisfactory to it, and that while by inadvertence and error the proofs first furnished referred to said disability as a disability resulting from an accidental injury, subsequently thereto plaintiff furnished to defendant detailed proofs of the disability from which he suffered due to disease, and defendant being fully advised in the premises, fully investigated plaintiff's claim of disability due to disease and acted thereon and rejected plaintiff's claim upon the ground that his disability was in fact due to accident and waived any objection to the form of the original proofs of disability, and by reason thereof is now estopped from denying that the proofs furnished were not sufficient under the terms of said policy."

The court overruled the defendant's motion for nonsuit made at the close of the plaintiff's case and likewise denied its motion for directed verdict in its

favor. The verdict of the jury was taken wherein it found in favor of the plaintiff in the sum of $1,527.50 with interest thereon at 6 per cent per annum from December 16, 1924, until paid. Upon this judgment was rendered and the defendant appeals.

The principal complaint against the decision is based upon the ruling of the court denying a nonsuit and refusing to direct a verdict for the defendant and further in admitting the testimony of the plaintiff about his mental and physical condition during the first few months he was in the hospital. Apparently this was designed to excuse him from making a correct report of the nature of his disability.

The new matter in the reply which undertakes to plead a waiver by the defendant of the conditions of the policy must be rejected. It has many times been held that if, in suing on a contract, the plaintiff relies upon any waiver of its conditions by the opposite party, he must state that waiver in his complaint, and not in his reply. In other words, the plaintiff must state the whole truth regarding his grievance in his complaint. He cannot, in his initial pleading, declare as upon a contract fully performed by him and afterward abandon that line of attack and rely upon waiver by the opposite party: *Lillienthal* v. *Hotaling,* 15 Or. 371 (15 Pac. 630); *Deering* v. *Creighton,* 9 Or. 118 (24 Pac. 198, 20 Am. St. Rep. 800); *Bruce* v. *Phoenix Ins. Co.,* 24 Or. 486 (34 Pac. 16); *Long Creek Bldg. Assn.* v. *State Ins. Co.,* 29 Or. 569 (46 Pac. 366); *Hannan* v. *Greenfield,* 36 Or. 97 (58 Pac. 888); *Young* v. *Stickney,* 46 Or. 101 (79 Pac. 345); *Cranston* v. *West Coast Life Ins. Co.,* 63 Or. 427 (128 Pac. 427).

Under the policy in question, indemnity, consisting of half monthly wages on account of something happening while employee is not engaged in the actual performance of all the duties of his occupation, may accrue from either of two sources: One where he is disabled through bodily disease and the other by reason of bodily injury incurred through violent, external and accidental means. His sickness must be so severe that he is confined to the house by reason thereof. There is no history of the case that the plaintiff was disabled for more than seven days through bodily disease at any time prior to the date when he fell on the sidewalk and fractured his hip. He made his claim on the basis of the fractured hip and continued that throughout the year, and, not until the twelfth payment was tendered him, did it occur to him or did he raise the question that he was entitled to an additional year's indemnity.

Looking to paragraph III of the policy, we ascertain that, whether this disability arises through bodily disease or by reason of bodily injury while the assured is not engaged in the actual performance of his duties, precisely the same indemnity attends the disability for 12 months. Paragraph IV provides indemnity supplemental to that described in the preceding section, but only in the event that the payment theretofore made was for disability resulting from bodily disease and, further, that it shall appear that within the time the payments have been thus given, the employee has become totally and permanently disabled. There is no supplemental indemnity unless payments have been made for bodily disease. "Were payments made for bodily disease?" The answer is "No." They were made upon the application of the plaintiff in every instance because of the accident

of falling upon the sidewalk.   No payment was made or claimed on account of bodily disease; hence, there is no basis under the terms of the policy for the supplemental indemnity.   Moreover, it is provided in section VI of the policy that indemnity shall not be payable unless the employee or employer shall give written notice to the Continental at its office in Chicago, Illinois, of the injury or sickness on which claim may be based within twenty days after the date of the accident causing the injury or after the commencement of the disability from sickness.   It is urged that the company must have known from the reports of the surgeon that the plaintiff was afflicted at one time with hemorrhoids and at other times with arteriosclerosis, but there is no showing in any of the notices that either of these diseases disabled the plaintiff.   The question is not whether the defendant had notice of the existence of the diseases mentioned. The company may have known that fact from a variety of sources, but the question is: Did the plaintiff or his employer ever give notice to the company in writing that he claimed either these diseases to be the basis of his demand?   The record is utterly barren of any written declaration of the kind.   As said by Mr. Justice Belt in *Keane* v. *City of Portland,* 115 Or. 1, 9 (235 Pac. 677, 680):

"It will not suffice to say that plaintiffs had actual notice of said proceedings.   Knowledge is not equivalent to statutory notice: *Wright* v. *City of McMinnville,* 59 Or. 397 (117 Pac. 298); *Bitting* v. *Douglas Co.,* 24 Or. 406 (33 Pac. 981); *Minard* v. *Douglas Co.,* 9 Or. 206; *Rice* v. *Wellman,* 5 Ohio C. C. 334."

In *Jefferson Realty Co.* v. *Employers' Liability Assur. Corporation,* 149 Ky. 741 (149 S. W. 1011), it is held:

"In order to fix the liability of an insurer for an accident on an elevator insured against accident to passengers, reasonable compliance with a condition of the policy requiring that it be given notice of any accident within a reasonable time was essential, regardless of whether noncompliance prejudiced the insurer."

In that instance, there were four elevators in the building—two insured in one company and the other two in the defendant company. Under a mistaken impression that the injury occurred in one of the elevators insured by another company, that other company was notified of the accident and called upon to defend. It acquired all the information about the matter it could and interposed a defense, but further discovered that the claim involved was not included in any of its policies. All the information was at once turned over to the defendant named in the reported case, so that in fact it had actual knowledge of all the occurrences, but from another source than from the claimant. The court held that no matter how accurate knowledge the defendant had, yet the claimant could not dispense with the notice agreed upon by the contract between the parties irrespective of whether the insurer was prejudiced or not.

In *Hatch* v. *United States Cas. Co.,* 197 Mass. 101 (83 N. E. 398, 125 Am. St. Rep. 332, 14 Ann. Cas. 290, 14 L. R. A. (N. S.) 503), the question was as to the sufficiency of the notice under a policy requiring notice to be given within 10 days of the event causing the injury. The court said:

"It is to be premised that the giving of this notice is not a condition subsequent, as it has been sometimes called. It is not simply a part of the rule of procedure for the enforcement of the liability of the defendant, as are the provisions of the fifth para-

graph in this same policy, providing for proofs of loss. The promise to insure is not absolute, but conditional. The condition is that the notice, whatever it may be and by whomsoever or whenever given, shall be given. It is a condition precedent to the creation of liability or the life of the promise; or, to put it perhaps in a better way, the giving of the notice is one of the essentials of the cause of action. * *

"If it be said, as it sometimes is, that such a defense is purely technical, the answer (if one is needed) is that the provision for notice is of the essence of the contract, that it is manifestly an important provision for the protection of the insurer against fraudulent claims, and also against those which, although made in good faith, are not valid. It is a provision which tends to the elucidation of the truth when a claim for indemnity is made. It was one to which the insured agreed, and it is not unreasonable." Citing many precedents.

See, also, *Johnson* v. *Maryland Cas. Co.,* 73 N. H. 259 (60 Atl. 1009, 111 Am. St. Rep. 609).

*Barclay* v. *London Guarantee and Accident Co.,* 46 Colo. 558 (105 Pac. 865), distinguishes the case of *United States Casualty Co.* v. *Hanson,* 20 Colo. App. 393 (79 Pac. 176), cited by Mr. Justice COSHOW, saying, as reported in the syllabus:

"The rule that every policy of insurance is to be interpreted favorably to the assured does not authorize the court to supplant the contract of the parties by one of its own making. The condition of a policy of accident insurance that 'upon the occurrence of an accident, and also upon receipt of notice of any claim on account of an accident, the assured shall give immediate notice in writing of such accident or claim with the fullest information available,' to the insurer, is a condition precedent. Without such notice or notices, or a legal excuse for the failure to give it, the insurer cannot be charged."

The question is not merely one of proof of loss. It is a question of whether or not the plaintiff performed the things required by the contract to be performed by him. He knew from the terms of the contract that the supplemental indemnity depended upon whether the payments made were upon the claim of disease or upon one of bodily injury, yet in every single instance in which he gave notice to the defendant he characterized it as caused by falling on the sidewalk. Nowhere does he intimate that any of the diseases, which were sometimes reported and again denied, were relied upon as the basis of his claim. Like charging an indorser on negotiable paper, it is here an element of the claim itself that notice be given in writing within 20 days that sickness was the basis of the claim. It may be admitted that the answers to the question about the existence of the diseases, sometimes positive and anon negative, would be solemn but not conclusive admissions against interest, if they were all the questions to be considered; but in none of the writings introduced in evidence is there any intimation that any disease was counted upon as a basis of the claim.

The judgment of the Circuit Court ought to be modified so as to allow the plaintiff judgment for the twelfth installment tendered on his claim, but allowing the defendant the costs and disbursements of the litigation in both courts.

McBRIDE, C. J., and BELT, J., concur in this opinion.